CLARK OIL CO, et al. v. PHILLIPS PETROLEUM CO. et al.

Civil Action No. 13.

District Court, D. Minnesota, Third Division.

July 25, 1944.

570

David T. Searls, of Houston, Tex., and G. A. Youngquist, of Minneapolis, Minn. (Vinson, Elkins, Weems & Frances, of Houston, Tex., and Fowler, Youngquist, Furber, Taney & Johnson, of Minneapolis, Minn., of counsel), for moving defendants.

Ernest A. Michel (of Davis, Michel, Yaeger & McGinley), of Minneapolis, Minn., for plaintiffs.

NORDBYE, District Judge.

The above-entitled cause came before the undersigned on motion of defendants Phillips Petroleum Company, The Pure Oil Company, Sinclair Refining Company, Shell Oil Company, Inc., formerly Shell Petroleum Corporation, Socony-Vacuum Oil Company Inc., Skelly Oil Company, Continental Oil Company, and Cities Service Oil Company for a summary judgment under Rule 56(b) of the Federal Rules of Civil Procedure 28 U.S.C.A. following section 723c, in favor of the moving defendants against the plaintiffs as to all claims set forth in plaintiffs' second amended complaint upon the grounds that there is no genuine issue as to any material fact and that the defendants are entitled to judgment as a matter of law.

From 1932 to about April 1, 1938, plaintiffs were engaged in the business of jobbing gasoline, oil and allied products to dealers in the State of Wisconsin. During the years 1935 and 1936, plaintiffs purchased gasoline from the Phillips Petroleum Company, one of the defendants above named, pursuant to a contract between them. According to that contract, plaintiffs were to pay the spot market tank price for each gallon purchased and this defendant guaranteed in said contract that plaintiffs' margin of profit should not be less than $3\frac{1}{2}$ cents per gallon. This contract was performed by both parties in the sense that plaintiffs bought, and the Phillips Company sold, the gasoline to which the contract pertained. However, during the time when the contract was being so performed, the Phillips Company and the other defendants herein, conspired to and did, set an artificial spot market tank price upon the gasoline which the plaintiffs and others were purchasing, in violation of the Sherman Anti-Trust Act. By reason of this conspiracy and these acts, it is alleged in the complaint that the spot market tank price which the Phillips Company charged plaintiffs in 1935 and 1936 was $2\frac{1}{4}$ cents per gallon higher than it would have been if the price had not been artificially set. During that time, plaintiff purchased some 6,273,660 gallons.

Plaintiffs now seek treble damages, costs of suit, and reasonable attorneys' fees which are recoverable by "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws * * *." 15 U.S.C.A. § 15. The defendants herein have been found guilty of violating the Sherman Anti-Trust Act, 15 U.S.C.A. § 1 et seq., by their actions of which plaintiffs now complain, and that conviction was sustained by the United States Supreme Court in United States v. Socony-Vacuum Oil Company, Inc., et al., 1940, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129. Consequently, there is no question at this time as to whether defendants have committed an act forbidden by the anti-trust laws. The only issue pertains to plaintiffs' right to recover as a "person * * * injured in his business or property."

Plaintiffs commenced this action on the damage theory that, as jobbers of gasoline, the margins received by them on the sale of the gasoline which they had purchased and sold during the years in question had been lessened to the extent of about two cents per gallon as the proximate result of the conspiracy referred to. The original complaint was filed in October, 1938. The case was then held in abeyance pending the appeal in companion cases involving the same theory of damages. After the decision in Twin Ports Oil Co. v. Pure Oil Co., 8 Cir., 119 F.2d 747, plaintiffs amended their bill of complaint and the damage claimed is now predicated on what plaintiffs assume to characterize as the "illegal exaction theory"; that is, it is now plaintiffs' position that, as the direct result of the conspiracy in which all of these defendants were involved, the Phillips Petroleum Company "illegally exacted" from them a higher price for gasoline. It is asserted that this higher price amounted to $2\frac{1}{4}$ cents per gallon, and therefore plaintiffs are entitled to recover treble the amount of the increase paid by them, together with their attorneys' fees and costs. It is plaintiffs' position that the payment by them as buyers and sellers of gasoline of an illegal price for the gasoline which they purchased, entitles them to recover without proof that they suffered any pecuniary loss in their business or property. It is earnestly urged that, even though their

margins or profits on the gasoline were not lessened by reason of the conspiracy, they are entitled to recover as damages on the basis of 2¼ cents per gallon on each and every gallon bought during the period in question. In other words, plaintiffs assert that, upon proving that they paid 2¼ cents per gallon more for the gasoline than they would have had to pay but for the conspiracy, they have made out a cause of action. They contend that any profit which they may have acquired as a result of their dealing with the Phillips Company, or the lack of any loss to them in spite of the conspiracy and increased prices, is in fact irrelevant. See Southern Pacific Co. v. Darnell-Taenzer Lumber Co., 1918, 245 U.S. 531, 38 S.Ct. 186, 62 L.Ed. 451, and Adams v. Mills, 1931, 286 U.S. 397, 52 S.Ct. 589, 76 L.Ed. 1184, upon which plaintiffs rely. This seems clear from their amended complaint of February 24, 1943. For after stating in Paragraph XIX that the defendants' acts caused the price to plaintiffs to increase 2¼ cents per gallon, plaintiffs allege " * * * that by reason of the violation of said Sherman Anti-Trust Law and the actions of the defendants in restraint of trade and commerce, as herein alleged, defendants illegally exacted from plaintiffs the sum of approximately two and one-fourth (2¼¢) cents per gallon on each gallon of gasoline purchased by plaintiffs, and that because of such illegal exaction, plaintiffs were injured to their damage in a sum equal to two and one-fourth (2¼¢) cents per gallon for each and every gallon of gasoline purchased by plaintiffs during the life of plaintiffs' contract with defendant, Phillips Petroleum Company, and during the period for which damages are claimed and sought as herein alleged."

And in Paragraph XXVI plaintiffs allege " * * * that by reason of the conspiracy alleged in the indictment herein mentioned plaintiffs were obliged to pay, and the Phillips Petroleum Company charged and made an illegal exaction of and against plaintiffs, amounting to the sum of Two and One-Fourth (2¼¢) Cents for each and every gallon of gasoline so purchased by the plaintiffs; * * * that said conspiracy impeded and closed a free and open market for the purchase of gasoline by the plaintiffs; that plaintiffs because of said conspiracy and in order to obtain gasoline in their business were obliged to, and did, pay said excess and said illegally exacted sum

of Two and One-Fourth (2¼¢) Cents per gallon for each and every gallon so purchased, and the defendant, Phillips Petroleum Company, did make an unlawful and illegal exaction of said sum of Two and One-Fourth (2¼¢) Cents for all of said gasoline so purchased from defendant; that said illegal exaction was made because, by reason of and under the conspiracy mentioned in the indictment * * *."

These injuries—the payment of 2¼ cents per gallon—are the only ones for which plaintiffs seek recovery. Although Paragraph VI contains a general allegation that "the plaintiffs herein are ones injured in their business and property, within the meaning of said laws," no facts except those which show 2¼ cents per gallon increase as a result of the conspiracy are stated anywhere in the complaint to support that general allegation. Consequently, it must be read in the light of the rest of the complaint.

Moreover, the amount of actual damages allegedly suffered (stated in Paragraphs XXVII and XXVIII), which is the basis for the treble damages asked, is the product of the number of gallons purchased and the 2¼ cents per gallon paid. Consequently, the amount sought by this action also looks only to the illegal exaction theory. That is, the increase in cost to the plaintiffs because of defendants' conspiracy is the only premise upon which plaintiffs base their amount of damages. Plaintiffs do allege in Paragraph XXVI of their complaint that the conspiracy "impeded and closed a free and open market for the purchase of gasoline by the plaintiffs"; but this allegation merely seems to look to the illegal exaction theory in different words and form, for the lack of a free market is a premise leading to the conclusion that there was an illegal exaction; that is, the deprivation of the free and open market damages plaintiffs because it causes the 2¼ cents increase, which is the exaction complained of.

After this motion was submitted, a pretrial conference took place. The purpose of the conference was to clarify further the exact legal theory of damages upon which plaintiffs were proceeding in their second amended complaint. The brief submitted by the plaintiffs on this motion seems to depart in some particulars from the basic theory of damages disclosed by the complaint. But any question regarding plaintiffs' theory of recovery is now set at rest

by the following statements and admissions of plaintiffs' counsel (pp. 2–4, Tr.):

"Mr. Searls: It is my understanding, if the Court please, that Mr. Michel will state his claim of damages under the last complaint filed in this cause.

"The Court: On March 2, 1943?

"Mr. Searls: Yes, sir, filed in this Court on March 2, 1943, and dated February 24, 1943.

"Mr. Michel: Mr. Searls, may I inquire at this time if it will not be admitted that the transaction in question was one in interstate commerce?

"Mr. Searls: The defendant does not question the fact that the gasoline purchased by the plaintiffs in this case was shipped to them in interstate commerce.

"Mr. Michel: In response to the question of Mr. Searls, and also in view of the fact that an informal discussion was had with the Court today, I state that the position of the plaintiff in this case is that upon proof of the conspiracy alleged in the complaint and upon further proof that that conspiracy caused an increase in the price of gasoline of approximately two and one-quarter cents per gallon, or whatever figure the evidence might show, that when that showing has been made the plaintiff has proven his cause of action, and that what the plaintiff later did with the gasoline it purchased, or what became of it, is not material once the conspiracy and the overcharge under the conspiracy has been shown and established by the evidence. Now does that cover the point?

"Mr. Searls: I think that covers it. It is my understanding, Mr. Michel, that you are not claiming under this complaint that your margin of profit was lessened on gasoline bought and resold.

"Mr. Michel: That is correct, Mr. Searls, we are proceeding here upon what has been called in this proceeding and in the brief the illegal exaction theory, that a cause of action existed immediately upon the conspiracy taking effect and increasing the price which the plaintiff had to pay for its gasoline over what it would have had to pay but for the existence and the carrying out of the conspiracy.

"Mr. Searls: Is it correct to say that your claim of damages is based on gasoline that was bought and was in fact resold in the ordinary course of business?

"Mr. Michel: Yes.

"Mr. Searls: Well, I think that covers it, Your Honor.

"The Court: I think so.

"Mr. Searls: Can it be understood, Mr. Michel, that the admissions by the parties in this hearing shall be deemed to be admissions as made at a pre-trial hearing of the parties?

"Mr. Michel: That understanding may be had.

"The Court: I take it that it may be further stipulated by the parties that the record which is now being made at this pre-trial conference may be considered by the Court as part of the record before him when he passes upon the motion for summary judgment which has been made by the defendants in this proceeding.

"Mr. Searls: That's true for the defendants, Your Honor.

"Mr. Michel: And that is true for the plaintiff.

"The Court: All right."

■ It has now been settled in the so-called treble damage oil cases, arising out of the conspiracy referred to, that a jobber of gasoline is not entitled to recover damages merely because there has been an increase in price of the gasoline bought as the result of the conspiracy, but he must affirmatively establish a pecuniary loss to his business and property by reason of such excessive payments. This principle was first enunciated in the Twin Ports Oil Company case, 8 Cir., 119 F.2d 747, certiorari denied 314 U.S. 644, 62 S.Ct. 84, 86 L.Ed. 516. This case was followed by the Seventh Circuit in Northwestern Oil Company v. Socony-Vacuum Oil Company, Inc., et al., 138 F.2d 967, certiorari denied 321 U.S. 792, 64 S.Ct. 790. See, also, Leonard v. Socony-Vacuum Oil Co. et al., D.C.W.D.Wis., 42 F.Supp. 369; Miller Oil Co. v. Socony-Vacuum Oil Co. et al., D.C.E.D.Mo., 37 F.Supp. 831. In the Twin Ports Oil Company case, plaintiff sought to recover damages on the ground that its margins had been depleted, but in failing to establish such depletion at the trial, it asserted on appeal that damages were shown and that it was error to direct a verdict because it was required to pay a price for the gasoline in excess of that which it would have had to pay but for the conspiracy. That this issue was passed upon

by the Circuit Court of Appeals is apparent from Judge Van Valkenbergh's decision, wherein he stated (pages 750, 751, of 119 F.2d):

"* * * There was Cox's testimony, however, that, as a result of this buying program, the tank car prices of gasoline had been raised by a little over two cents per gallon. Of course this could in any event result in no damage to appellant, absent proof that its selling price was not correspondingly increased, and particularly since its contract with appellee protected the stability of its margins. Therefore, appellant was constrained to base its claim to recover upon rules announced in cases involving fundamentally differing enactments and distinctive grounds for relief. In this connection its counsel cite specifically Southern Pacific Company et al. v. Darnell-Taenzer Lumber Company et al., 245 U.S. 531, 38 S.Ct. 186, 62 L.Ed. 451, and Adams v. Mills, 286 U.S. 397, 52 S.Ct. 589, 76 L.Ed. 1184. * * *

"The mere fact that the existence of a conspiracy to raise prices is established is not sufficient ipso facto, to support a judgment for damages under the Sherman Act. This statute differs materially in its provisions from those of the Interstate Commerce Act which insure definite and specific recoveries for departures from published tariffs, and from payments of unreasonable and discriminatory freight rates. It is to be noted that here a recovery is sought for triple damages, a privilege that immediately suggests necessary definiteness in the basis of damages as attributable to the violation of the Federal Act."

Likewise, in Northwestern Oil Co. v. Socony-Vacuum Oil Co., the court commented upon the rule of damages which is applicable to cases arising under the Clayton Act, and stated (page 971 of 138 F.2d):

"In other words the Clayton Act does not permit recovery by plaintiff in causes such as this for unlawful prices as such but authorizes recovery only of pecuniary loss to property or business."

The views indicated in the above cases as to the rule of damages under the anti-trust laws are fully sustained by the Supreme Court in Keogh v. Chicago & Northwestern R. Co. et al., 260 U.S. 156, 165, 43 S.Ct. 47, 50, 67 L.Ed. 183. There, the Supreme Court upheld a judgment sustaining a demurrer to the complaint for treble damages under the anti-trust laws and held that the plaintiff must allege more than the mere payment of an increased price, the court stating:

"* * * Exaction of this higher legal rate may not have injured Keogh at all; for a lower rate might not have benefited him. Every competitor was entitled to be put—and we must presume would have been put—on a parity with him. And for every article competing with excelsior and tow, like adjustment of the rate must have been made. Under these circumstances no court or jury could say that, if the rate had been lower, Keogh would have enjoyed the difference between the rates or that any other advantage would have accrued to him. The benefit might have gone to his customers, or conceivably, to the ultimate consumer."

Plaintiffs rely chiefly upon Southern Pacific Co. v. Darnell-Taenzer Lumber Co., 245 U.S. 531, 38 S.Ct. 186, 62 L.Ed. 451, and Adams v. Mills, 286 U.S. 397, 52 S.Ct. 589, 76 L.Ed. 1184, which are interstate commerce cases and are decided under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq. The Circuit Court of Appeals for this circuit has distinguished these cases, see Twin Ports Oil Co. v. Pure Oil Co., 119 F.2d 747, and the United States Supreme Court distinguished the Darnell-Taenzer case, upon which the Adams case is based, in Keogh v. Chicago & Northwestern R. Co., supra.

Straus v. Victor Talking Machine Co., 2 Cir., 297 F. 791, upon which plaintiffs also rely, is readily distinguishable from the instant case. In that case, actual pecuniary loss appears to have existed. Plaintiff there bought and sold at retail prices because of the conspiracy. Plaintiff there was unable to pass on the increased price. In effect, although not in name, he sued for loss of profits on the merchandise he sold during the conspiracy's existence, and he was able to prove that loss. The loss he sustained from being unable to purchase from defendant, and his loss of profit, were identical. In the instant case, on the other hand, the pleadings, as noted above, and the admission at the pre-trial conference, do not claim plaintiffs here suffered actual pecuniary losses of profit as a result of the conspiracy. They only allege an illegal exaction which resulted from the higher prices paid for each gallon of gasoline purchased. Thom-

sen v. Cayser, 243 U.S. 66, 37 S.Ct. 353, 61 L.Ed. 597, Ann.Cas.1917D, 322, does not support plaintiffs' theory under the admitted facts herein. It declares the excessive charge which appeared in that case to be an "element of injury." Plaintiffs in the instant case claim that the excessive charge is itself the injury. Moreover, actual pecuniary loss seems to have resulted in that case.

■ The cases under the anti-trust statutes do not proceed under the theory that a plaintiff has the right to recover damages only from the person who is in privity with the injured party. They are to be differentiated from the so-called tariff overcharge cases which have arisen by reason of violation of the authorized tariffs. There, the right of recovery follows as a matter of law without showing pecuniary loss. Louisville & N. R. Co. v. Sloss-Sheffield Steel & Iron Co., 269 U.S. 217, 235, 46 S.Ct. 73, 70 L.Ed. 242; New York, N. H. & H. R. Co. et al. v. Ballou & Wright, 9 Cir., 242 F. 862, 867; Doughty-McDonald Grocery Co. v. Atchison, Topeka & Santa Fe Ry. Co. et al., 155 I.C.C. 47. It will be noted that, in the tariff overcharge cases, the over-charges as such may be recovered only from the person in privity with the carrier and against the carrier which collected the over-charge. Southern Pacific Co. et al. v. Darnell-Taenzer Lumber Co. et al., 245 U.S. 531, 534, 38 S.Ct. 186, 62 L.Ed. 451; Missouri Portland Cement Co. v. Director General, as Agent, 88 I.C.C. 492, 495, 496; Nicola, Stone & Myers Co. v. Louisville & Nashville R. Co. et al., 14 I.C.C. 199, 209. The one who is required to pay such an overcharge in the first instance is the only one who can recover. Whether there has been subsequent reimbursement from others is immaterial. But, under the Clayton Act, the teaching of all the cases is that it is the pecuniary loss to one's business or property which constitutes the damages. It is this damage which is trebled and all the wrongdoers must respond regardless of any privity with the injured party. Recovery under the anti-trust statute is not limited to the person in privity with the wrongdoer, but permits all persons who may have been injured as a proximate result of a wrong to recover. It seems clear, therefore, that the increase in price is not, in and of itself, the yardstick of damage. The damages may have been more or less, depending upon the circumstances. Clearly, where the person who has paid an excessive price has been able to pass on the increased cost to the ultimate consumer, he cannot recover. Northwestern Oil Co. v. Socony-Vacuum Co., supra, 138 F.2d at page 971. There is an utter absence of any support for the theory of damages now asserted which would require a defendant to respond in damage on the so-called illegal exaction theory where such defendant did not exact or receive any moneys whatsoever from the plaintiffs. Moreover, the attempted characterization of the theory of damages in the instant case as one of "illegal exaction" cannot change the basic and fundamental principle of damages in anti-trust cases, which is pecuniary loss. It is elementary that there may be illegal exaction without pecuniary loss.

These distinguishing principles have been recognized by the Supreme Court, not only in Keogh v. Chicago & Northwestern R. Co., but are emphasized in suits under the Interstate Commerce Act in cases involving a violation of the unjust discrimination provision, Section 2, 49 U.S.C.A. § 2, and the cases involving the violation of Section 4, 49 U.S.C.A. § 4, the long and short haul provision. In these latter cases, pecuniary loss must be established. Pennsylvania R. Co. v. International Coal Mining Co., 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446, Ann. Cas.1915A, 315; Davis v. Portland Seed Co., 264 U.S. 403, 44 S.Ct. 380, 68 L.Ed. 762.

■ As indicated in the earlier portion of this order, plaintiffs have abandoned any theory of damage by reason of decreased margins in the sale of gasoline for which they paid a price higher than it would have been but for the conspiracy. Moreover, they now expressly admit that they do not claim that their margins were decreased. For aught there appears in the bill of complaint, the raising of the price of the gasoline by the Phillips Petroleum Company may have enabled the plaintiffs to obtain even greater margins and greater profits than they would have received but for the conspiracy. As stated by this Court in Twin Ports Oil Co. v. Pure Oil Co., 46 F.Supp. 149, 152:

"* * * in every violation of the Sherman Act, there is no legal or logical inference that someone has sustained recoverable damages in a civil action. A conspiracy under the Act may afford the Government the right to injunction or to

the prosecution of criminal proceedings, but it does not necessarily follow that everyone who did business with the conspirators during the period were damaged, so as to enable them to recover in a civil proceeding. Every well-considered decision recognizes that the fact of damage must be established by clear and satisfactory evidence, while the amount of damage may be approximated if the fact of damage appears with reasonable certainty and definiteness. Palmer et al. v. Connecticut Railway & Lighting Co., 311 U.S. 544, 61 S.Ct. 379, 85 L.Ed. 336; Calkins v. F. W. Woolworth Co., 8 Cir., 27 F.2d 314; Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544; Twin Ports Oil Co. v. Pure Oil Co., 8 Cir., 119 F.2d 747."

Summarizing, therefore, the issues on this motion, it appears that plaintiffs purchased gasoline at an excessive price as a result of a conspiracy to violate the Anti-Trust Act, and that they sold all such gasoline in the usual course of business. They allege and claim no diminution of margins or profits. They allege and claim no injury to their business or property. One is impelled to find, therefore, that they have not sustained any injury or damage within the meaning of the anti-trust statutes, and, absent injury, there can be no recovery for the wrong. Definiteness of some damages as the direct result of the conspiracy is a prerequisite of recovery under the statute.

A stipulation has been entered into in this proceeding whereby it has been agreed that the determination of this motion adversely to the plaintiffs, and upon such judgment becoming final, dismissals with prejudice will be entered in some sixteen companion cases involving the same issues. This case, therefore, is a so-called test case which will control the disposition of the other cases. It may be assumed, therefore, that the plaintiffs do not suggest that they may be permitted to amend their second amended complaint further, and therefore this case should be finally disposed of on the merits.

It is ordered: That the moving defendants have judgment that plaintiffs, and each of them, take nothing by their second amended bill of complaint herein, and that the same be dismissed on the merits, with costs to the moving defendants.

An exception is allowed to the plaintiffs.