## McCAIN v. SOCONY–VACUUM OIL CO., Inc., et al.
### No. 422.

District Court, W. D. Missouri, S. D.
Dec. 7, 1945.

Sizer & Myres, of Monett, Mo., and Wm. L. Vandeventer and Frank B. Williams, both of Springfield, Mo., for plaintiff.

Vinson, Elkins, Weems & Francis and David T. Searls, all of Houston, Tex., Mann & Mann, of Springfield Mo., and Gladys Stewart, of Ava, Mo., for defendants.

REEVES, District Judge.

The defendants have filed their joint motion for a summary judgment under the provisions of paragraph (b), Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. In the alternative, they seek a ruling that the plaintiff be required to make a more definite statement of his claim in the event the motion for a summary judgment is denied.

The suit was instituted under the provisions of Section 15, 15 U.S.C.A., as follows: "Any person who shall be injured in his business or property by reason of anything forbidden in the anti-trust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

Section 1 of said Title 15, supra, condemns as illegal "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, * * *."

Pursuant to the latter section the defendants were convicted of having violated the provisions thereof. Such conviction was affirmed, United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129, and was upon an indictment which charged the several defendants with having "combined and conspired together for the purpose of artificially raising and fixing the tank car prices of gasoline in the aforementioned spot markets, and, as intended by them, defendants have artificially raised and fixed said spot market tank car prices of gasoline and have maintained said prices at artificially high and noncompetitive levels, and at levels agreed upon among them and have thereby intentionally increased and fixed the tank car prices of gasoline contracted to be sold and sold in interstate commerce as aforesaid * * * and have arbitrarily, by reason of the provisions of the prevailing form of jobber contracts above described in paragraph 11, exacted large sums of money from thousands of jobbers with whom they have had such contracts * * * and in turn have intentionally raised the general level of retail prices prevailing * * *. In so doing, defendants have then and there engaged in an unlawful combination and conspiracy in restraint of trade and commerce in gasoline among the several states of the United States * * *."

The plaintiff asserts that Purity Oil Company, a local corporation wholly owned and controlled by him, became and was the victim of such conspiracy and became and was entitled to maintain an action perforce the provisions of said Section 15, Title 15, supra. It is further claimed by the plaintiff that he was president, treasurer, general manager, and operator of said Purity Oil Company from 1930 until it was adjudged a bankrupt on September 23, 1938; that during that period the said corporation was engaged in "a general business of selling oils, gasoline and other products in Southwest Missouri in said Mid-Western area; * * * operated bulk stations at Aurora, Greenfield, Mansfield, West Plains, Winona and Springfield, Missouri, and furnished gasoline for approximately 200 filling stations, having approximately 350 pumps." The injury to its business and property was alleged by paragraph 5 of the complaint, as follows: "* * * defendants set a price on gasoline in the territory supplied by plaintiff's corporation * * * and thereby reduced the spread of profit between the refineries and the sales by the service stations of said defendants to such a small amount that it would not meet the overhead and ordinary expenses of plaintiff's said corporation in the operation of its bulk plants and service stations and thereby forced plaintiff's said corporation to market gasoline at a price, fixed by defendants, as charged in said indictment, insufficient to pay the costs of marketing said gasoline; that this spread on gasoline was generally 5½¢, 2¢ to the jobber and 3½¢ to the independent service station at which price it was impossible for plaintiff's

corporation to operate its business at a profit and which fixed price compelled said corporation to operate at a loss, as a direct, natural and proximate result of said conspiracy; that because of this condition, plaintiff's said corporation lost a large amount of money in the years 1935, 1936, 1937, and 1938, as hereinafter more specifically set forth."

Thereafter the plaintiff scheduled specific losses claimed to have been sustained by his said corporation. It appeared from the complaint that, after adjudication in bankruptcy and after the due administration of the estate of said Purity Oil Company, its unliquid assets were sold by the trustee, among other items being the right of action for damages against these defendants. By mesne and intermediate transfers the plaintiff acquired the chose or right of action and thereafter instituted this suit.

Not only do the defendants assert that they are entitled to a summary judgment, that plaintiff take nothing by his action, or, in the alternative, that he be required to specify more particularly and definitely a statement of his claim, but, that, in addition, the action violates the law of champerty and maintenance.

All of these contentions will be noticed and further statement of facts will be made in the course of this memorandum opinion if same should become pertinent.

1. It is the theory of the defendants that the complaint is defective because it does not appear therefrom that the plaintiff's predecessor absorbed the increases in retail prices and jobber prices and in consequence no injury accrued to his predecessor, the Purity Oil Company.

The defendants rely upon a number of somewhat similar cases adjudicated in their favor on similar motions. Attention is particularly called to the case of Clark Oil Co. v. Phillips Petroleum Co., 8 Cir., 148 F.2d 580. A judgment dismissing the action was affirmed by the Court of Appeals. It was the contention of the plaintiffs in that case that, as a predicate for recovery, it was only necessary to establish conspiracy and the increase "in the price of Gasoline." Plaintiffs' counsel believed that that was sufficient to entitle plaintiffs to a verdict of a jury. The Court of Appeals held otherwise and quoted from Twin Ports Oil Co. v. Pure Oil Co., 8 Cir., 119 F.2d 747, as follows: " 'The mere fact that

the existence of a conspiracy to raise prices is established is not sufficient ipso facto, to support a judgment for damages under the Sherman Act. * * * It is to be noted that here a recovery is sought for triple damages, a privilege that immediately suggests necessary definiteness in the basis of damages as attributable to the violation of the Federal Act.' " [148 F.2d 582.]

Quite clearly it became the duty of the court to grant a motion for a summary judgment upon such a theory.

In the Seventh Circuit, it was likewise ruled in Northwestern Oil Co. v. Socony-Vacuum Oil Co., Inc., et al., 138 F.2d 967, 971. In the latter case the plaintiff lost from failure of proof to show "whether it had in fact escaped damages by fixing equivalently larger selling prices, thus passing on the increased cost to its purchasers." In the opinion the court said: " * * * the Clayton Act does not permit recovery by plaintiff in causes such as this for unlawful prices as such but authorizes recovery only of pecuniary loss to property or business."

The gist of the decision is found in the following language, (loc. cit. 971): "Inasmuch as plaintiff has wholly failed to prove any loss to its property or business but rather has shown, by all reasonable inferences, that the increased cost of which it complained was passed on to the ultimate consumer, the court rightfully directed a verdict for defendant."

In this case, unless the plaintiff shows that its predecessor actually sustained injury to its property or its business, then a verdict for the defendants should be directed. However, that point cannot be reached on a motion for a summary judgment on the pleadings and supporting data.

In the case of Leonard v. Socony-Vacuum Oil Co., Inc., et al., 7 Cir., 130 F.2d 535, disposition was made of that case on a purely technical question. The plaintiff prematurely appealed from an order of the court granting the motion for a partial summary judgment.

The case that appears to be decisive of the questions here presented is Twin Ports Oil Co. v. Pure Oil Co., 8 Cir., 119 F.2d 747. The complaint in the latter case was somewhat similar to the complaint in this case. . The issues were made up and the case was tried. The plaintiff was cast, be-

cause, as stated in the opinion (loc. cit. 750): "It is evident from the argument of appellant's counsel in their brief that they found it impossible to show that an increase in the price of gasoline to appellant was not immediately reflected in a corresponding increase in the retailers' price during the years in question. Therefore, there was no loss in margins, nor in the sale of appellant's property that could be attributed to this so-called buying program. There was Cox's testimony, however, that, as a result of this buying program, the tank car prices of gasoline had been raised by a little over two cents per gallon. Of course this could in any event result in no damage to appellant, absent proof that its selling price was not correspondingly increased, and particularly since its contract with appellee protected the stability of its margins."

The defendants are not entitled to a summary judgment.

2. As stated, in the alternative, the defendants ask for a more definite statement of the claim asserted by the plaintiff. It has been frequently pointed out by this court, as well as other courts, that the motions for a more definite statement or for bills of particulars have tended toward obsolescence in the light of the discovery rules.

It was the purpose of Rule 8(a), Federal Rules of Civil Procedure, to require brevity in pleadings. To enforce the provisions of Rule 12(e), Federal Rules of Civil Procedure, would restore the former practice of verbosity and prolixity in pleadings. By requests for admissions, by interrogatories, or by depositions, the defendants can easily obtain informative details of plaintiff's claim. However, adverting to the complaint, it is quite specific as to the nature of the claim and there appears no reason why the defendants cannot prepare and file responsive pleadings.

The motion for a more definite statement should be overruled.

3. The last matter urged by the defendants is that the action is champertous and therefore violates the policy of our law.

"Champerty consists of an agreement whereby a person without interest in another's suit undertakes to carry it on at his own expense, in whole or in part, in consideration of receiving in the event of success, a part of the proceeds of the litigation." 14 C.J.S. Champerty and Maintenance, § 1, p. 356.

Ordinarily champerty and maintenance mean that the action is carried on in the name of another, and not the champertor. In this case, the plaintiff asserts that he had a considerable interest in the corporate entity claimed to have been forced into bankruptcy. In fact, according to the averments of the complaint, Purity Oil Company was an alter ego of the plaintiff. After distribution had been made to creditors in regular proceedings the plaintiff acquired the right of action appertaining to his corporate entity and has brought this suit. As said by Mr. Justice Story in his admirable work on Equity Jurisprudence: " 'But the doctrine of the common law as to champerty and maintenance is to be understood with proper limitations and qualifications, and cannot be applied to a person having an interest or believing that he has an interest in the subject in dispute and bona fide acting in the suit; for he may lawfully assist in the defense or maintenance of that suit.' " This excerpt was quoted approvingly by Judge Lamm of the Missouri Supreme Court, in Breeden v. Insurance Co., 220 Mo. 327, loc. cit. 424, 119 S.W. 576.

In the comparatively recent case of Curry v. Dahlberg, 341 Mo. 897, 110 S.W. 2d 742, loc. cit. 748, Judge Hyde expressed the objective of the law as follows: "The purpose of the law of champerty and maintenance was to prevent officious intermeddling in the affairs of others for purposes of speculation or other unworthy motives, and to prevent the strong and influential men of early English times from oppressing the weak."

Certainly this is not a contest wherein the plaintiff, as a strong and influential man, is endeavoring to oppress the weak. The complaint should not be dismissed upon the theory that the action of plaintiff violates the law of champerty and maintenance.