COMMONWEALTH EDISON COMPANY
et al., Plaintiffs-Appellees,

v.

ALLIS–CHALMERS MANUFACTURING
COMPANY et al., Defendants-
Appellants.

No. 14459.

United States Court of Appeals
Seventh Circuit,

Aug. 7, 1964.

Hammond E. Chaffetz, Richard M.
Keck, W. Donald McSweeney, Edward R.

Johnston, Holmes Baldridge, Chicago, Ill., for appellants.

Robert W. Bergstrom, Thomas L. Nicholson, Chicago, Ill., for appellees.

Before HASTINGS, Chief Judge, and SWYGERT and MAJOR, Circuit Judges.

SWYGERT, Circuit Judge.

This is an interlocutory appeal from an order of the district court sustaining plaintiffs' objections to interrogatories filed by defendants. Plaintiffs are sixteen public utilities engaged in generating and selling electricity. Defendants General Electric Company, Westinghouse Electric Corporation, and Allis-Chalmers Manufacturing Company manufacture power transformers and turbine-generators. Defendants McGraw-Edison Company, Maloney Electric Company, and Wagner Electric Corporation manufacture power transformers.

The complaints charged defendants engaged in price fixing conspiracies in violation of section 1 of the Sherman Act, 15 U.S.C. § 1, and are an aftermath of the so-called Philadelphia electric conspiracy cases. Plaintiffs seek treble damages, pursuant to section 4 of the Clayton Act, 15 U.S.C. § 15, resulting from allegedly excessive prices paid for power transformers and turbine-generators purchased from defendants.

Defendants sought by the interrogatories to determine the extent plaintiffs passed on to their customers the purported excess charges paid for the electrical equipment. The district judge ruled that evidence of passing-on which defendants might adduce would be irrelevant as a matter of law. His opinion appears in 225 F.Supp. 332. Pursuant to 28 U.S.C. § 1292(b), the district judge certified to this court that his ruling involved a question of importance of which an immediate appeal would advance the ultimate termination of these actions.

The question certified to this court is whether plaintiffs should be required to answer interrogatories designed to discover if they passed on to consumers of electricity, in whole or in part, the alleged overcharges in their purchase of electrical equipment used to produce and distribute electricity; that is, is this evidence relevant as a matter of law.

Interrogatories substantially similar were before five other district courts in companion electrical treble damage litigation. In three of the actions, objections to the interrogatories were sustained.[1] In two cases, the interrogatories were or will be answered.[2]

The district judge in the instant cases based his decision primarily on Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L. Ed. 241 (1906). There, the municipality, which operated a waterworks, sought threefold damages under the antitrust laws because of the purchase of pipe at allegedly unreasonable prices caused by an illegal arrangement among suppliers. The Court affirmed the city's recovery of the overcharge (trebled) resulting from the violation. Mr. Justice Holmes, speaking for the Court, said that the city was injured in its property by having to pay more than the worth of the pipe. The Justice made the further observation that, "[W]hen a man is made poorer by an extravagant bill we do not regard his wealth as a unity * * *. We do not go behind the person of the sufferer. We say that he has been defrauded or subjected to duress, or whatever it may be, and stop there." Defend-

1. Public Util. Dist. No. 1 v. General Electric Co., 230 F.Supp. 744 (W.D.Wash. 1964); Atlantic City Elec. Co. v. General Elec. Co., 226 F.Supp. 59 (S.D.N.Y. 1964); Philadelphia Elec. Co. v. Westinghouse Elec. Corp., Civil No. 30015 (E. D.Pa. Dec. 16, 1963).

2. In North West Elec. Power Co-op v. Maloney Elec. Co., Civil No. 13290 (W.D. Mo. Mar. 2, 1964), the court directed that plaintiff answer, without deciding if passing-on was relevant. In Union Elec. Co. v. Westinghouse Elec. Corp., Civil No. 61 C 407 (E.D.Mo.1963), plaintiff answered interrogations without the court ruling on the pass-on issue.

ants correctly point out that the issue of passing-on was not raised in Chattanooga. Yet it is the start of a line of decisions that guides the resolution of the problem we face.

The Supreme Court in a later decision, Thomsen v. Cayser, 243 U.S. 66, 37 S. Ct. 353, 61 L.Ed. 597 (1917), iterated the measure of damages enunciated in Chattanooga (reimbursement of excess charges). In Thomsen, plaintiffs sought damages under the antitrust laws for injuries caused by unreasonable rates charged for transporting freight by vessel because of a combination in restraint of foreign trade. The Court said that plaintiffs alleged an unreasonable rate and if the charge was true "the excess over what was reasonable was an element of injury." Again, there was no mention of whether the shippers had absorbed the excess charges or had passed them on to their customers.

The pass-on defense under federal law was initiated in cases arising under the Interstate Commerce Act. Section 1 of that act forbids carriers from charging "unjust and unreasonable rates";[3] section 2 forbids carriers charging or receiving a "greater or less compensation" for services than they charge or receive from others;[4] and section 8 renders carriers who violate any provision of the act liable for "the full amount of damages sustained."[5]

Southern Pac. Co. v. Darnell-Taenzer Lumber Co., 245 U.S. 531, 38 S.Ct. 186, 62 L.Ed. 451 (1918), was an action by a shipper against several railroads to recover reparations awarded by the Interstate Commerce Commission because of excessive freight rates. The Court, in rejecting the pass-on defense, held that "the general tendency of the law, in regard to damages at least, is not to go beyond the first step." It said that, "The plaintiffs suffered losses to the amount of the verdict when they paid.

Their claim accrued at once in the theory of the law and it does not inquire into later events." Moreover, the Court observed that the "carrier ought not to be allowed to retain his illegal profit" and the one to recover was the shipper.

The Court distinguished cases like Pennsylvania R.R. v. International Coal Mining Co., 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446 (1913), in which a shipper who paid only the reasonable rate sued under section 2 of the Commerce Act for discrimination because some other shipper had paid less. The Court said that in discrimination cases the damages depend upon remoter considerations.

Defendants urge that Darnell-Taenzer is irrelevant to the applicability of the pass-on defense to antitrust treble damage suits because of Keogh v. Chicago & N.W. Ry., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922). There, a conspiracy in restraint of trade increased the freight rates on plaintiff's product. When plaintiff complained to the Interstate Commerce Commission, the Commission approved the rates. Having no grounds, therefore, to seek reparation, plaintiff sought to recover in an action in antitrust for treble damages. The Court denied recovery, holding that no cause of action existed under the Sherman Act. The Court observed, however, that the case "is not like those cases where a shipper recovers from the carrier the amount by which its exaction exceeded the legal rate," citing Darnell-Taenzer. Instead, the Court compared the case to the discrimination case, Pennsylvania R. R. v. International Coal Mining Co., supra, and indicated that under the antitrust laws "as under section 8 of the Act to Regulate Commerce * * * recovery cannot be had unless it is shown, that, as a result of defendants' acts, damages in some amount susceptible of expression in figures resulted." The Court concluded that the alleged damage to

3. 24 Stat. 379 (1887), as amended, 49 U. S.C. § 1(5) (1958).

4. 24 Stat. 379 (1887), as amended, 49 U.S.C. § 2 (1958).

5. 24 Stat. 382 (1887), as amended, 49 U.S.C. § 8 (1958).

Keogh was based on a legal rate which was charged to all shippers and that a lower rate might not have injured him at all since every competitor would have been entitled to the same reduction. The Court said that under these circumstances no court could find that, if the rate had been lower, Keogh would have benefited; "the benefit might have gone to his customers, or conceivably, to the ultimate consumer."

We agree with the district judge that in Keogh the Court's discussion of damages was not required for its holding and was dictum. The Court specifically said that the sole question for decision was whether there was a cause of action under the antitrust laws. It is patent, therefore, that the discussion of damages was hypothetical and not the ratio decidendi of the decision.

Defendants also contend that Darnell-Taenzer has no application to actions for damages under the antitrust laws because it applies only to recovery under section 1 of the Commerce Act for overcharges in rates, regardless of the absence of pecuniary loss. To support their contention, they cite Pennsylvania R.R. v. International Coal Mining Co., supra, which involved an action under section 2 of the Commerce Act for rate discrimination. In Pennsylvania the Court said that a plaintiff seeking recovery under section 1 may recover "the excess, not as damages but as overcharge"; whereas the Court held that a suit under section 2 "is limited to the pecuniary loss suffered and proved."

Analyzing Darnell-Taenzer, Pennsylvania, and subsequent cases, it is apparent that the Court did not draw the distinction defendants urge. In both reparation overcharge and discrimination cases, pecuniary loss on the part of the shipper must be shown. In Darnell-Taenzer, the court of appeals said, "[T]he amounts awarded represent the actual pecuniary loss of the respective plaintiffs." (221 F. 890 at 892.) And the Supreme Court reiterated, "The plaintiffs suffered losses through the amount of the verdict when they paid." (245 U.S. at 534, 38 S.Ct. at 186.) In reparation cases the payment of the overcharge is presumptive evidence of damages, whereas in discrimination cases the plaintiff must prove damage by showing loss of customers or having lowered his prices to meet competition. This was made clear in two cases, Adams v. Mills, 286 U.S. 397, 52 S.Ct. 589, 76 L.Ed. 1184 (1932), ICC v. U. S. ex rel. Campbell, 289 U.S. 385, 53 S.Ct. 607, 77 L.Ed. 1273 (1933). Thus the distinction between these two types of cases relates to the *method* of proving pecuniary loss and not to the question of whether actual loss is suffered by the plaintiff. We conclude that Darnell-Taenzer is not as restrictive a holding as defendants contend but has broader implications both under the Interstate Commerce Act and the analogous situation in which damages are recoverable because of a statutory tort such as defined in the Clayton Act.

The pass-on defense was first recognized by the courts in antitrust cases in the so-called Oil Jobber cases decided in the Seventh and Eighth Circuits. Clark Oil Co. v. Phillips Petroleum Co., 148 F.2d 580 (8th Cir.), cert. denied, 326 U.S. 734, 66 S.Ct. 42, 90 L.Ed. 437 (1945), affirming 56 F.Supp. 569 (C.D. Minn.1944); Northwestern Oil Co. v. Socony-Vacuum Oil Co., 138 F.2d 967 (7th Cir. 1943), cert. denied, 321 U.S. 792, 64 S.Ct. 790, 88 L.Ed. 1081 (1944); Twin Ports Oil Co. v. Pure Oil Co., 119 F.2d 747 (8th Cir.), cert. denied, 314 U.S. 644, 62 S.Ct. 84, 86 L.Ed. 516 (1941); McCain v. Socony-Vacuum Oil Co., 64 F.Supp. 12 (W.D.Mo.1945); Leonard v. Socony-Vacuum Oil Co., 42 F.Supp. 369 (W.D.Wis.), appeal dismissed, 130 F.2d 535 (7th Cir. 1942). These cases were the aftermath of the Government's successful prosecution of a price fixing conspiracy charge against several oil companies. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). Plaintiffs were oil jobbers who purchased gasoline from the oil companies and resold it to service stations. The jobbers

claimed that the oil companies had increased the cost of gasoline through price fixing practices. They sued the companies for damages treble the extent of the overcharges. The oil companies had set the prices paid by the jobbers and the service stations; the difference, the jobbers' profit margin, was kept constant, in some instances by contractual guarantees. Recovery was denied in all the cases.

This court in Northwestern Oil and the Eighth Circuit in Twin Ports and Clark held that the plaintiffs were not entitled to recover because they had passed on overcharges to the service stations. Relying on Pennsylvania R.R. v. International Coal Mining Co., supra, we held in Northwestern Oil that the Clayton Act permits recovery only when there is pecuniary loss to the plaintiff's property or business; that plaintiff had failed to show such loss since the "increased cost of which it complained was passed on to the ultimate consumer."

A number of courts approved the pass-on defense as enunciated in the Oil Jobber cases. Miller Motors v. Ford Motor Co., 252 F.2d 441 (4th Cir. 1958); Wolfe v. National Lead Co., 225 F.2d 427 (9th Cir.), cert. denied, 350 U.S. 915, 76 S. Ct. 198, 100 L.Ed. 802 (1955); Banana Distributors, Inc. v. United Fruit Co., 162 F.Supp. 32 (S.D.N.Y.1958), rev'd on other grounds, 269 F.2d 790 (2d Cir. 1959); Beacon Fruit & Produce Co. v. H. Harris & Co., 160 F.Supp. 95 (D. Mass.), aff'd per curiam, 260 F.2d 958 (1st Cir. 1958), cert. denied, 359 U.S. 984, 79 S.Ct. 942, 3 L.Ed.2d 933 (1959). In none of these cases, however, was the discussion of the pass-on defense necessary for the court's decision; the approval of the defense was dictum.

The first case to disallow the use of the pass-on defense in a private antitrust action was Hanover Shoe, Inc. v. United Shoe Mach. Corp., 185 F.Supp. 826 (M. D.Pa.), aff'd per curiam, 281 F.2d 481 (3d Cir.), cert. denied, 364 U.S. 901, 81 S.Ct. 234, 5 L.Ed.2d 194 (1960). There, Hanover sued United for treble damages following United's conviction for monopolizing the shoe machinery industry. Plaintiff claimed it was required to pay excessive rentals for the use of United's machinery and thereby suffered damages. United alleged that Hanover had passed on the excessive rentals to its customers by increasing its prices. The district court ruled that Hanover had been injured at the time it paid the rentals, rendering the question of passing-on irrelevant. The court, relying on Darnell-Taenzer, distinguished the Oil Jobber cases on the ground that the jobbers had been "middlemen" who passed on the increased prices of gasoline to the service stations, whereas in Hanover the plaintiff was the "consumer" of the machinery which it rented from United. The court of appeals by per curiam affirmed on the basis of the opinion of the district court.

Defendants assert that subsequent to Hanover, three courts have upheld the pass-on defense. They cite Enterprise Industries Inc. v. Texas Co., 240 F.2d 457 (2d Cir.), cert. denied, 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed.2d 914 (1957); Kidd v. Esso Standard Oil Co., 295 F.2d 497 (6th Cir. 1961); and Freedman v. Philadelphia Terminals Auction Co., 301 F.2d 830 (3d Cir.), cert. denied, 371 U. S. 829, 83 S.Ct. 40, 9 L.Ed.2d 67 (1962). In these cases actions were brought under the Robinson-Patman Act, seeking damages for price discrimination. The decisions in Enterprise and Kidd did not turn on the pass-on defense. In Freedman, the court, applying the Hanover middleman-consumer distinction, denied recovery on the ground that plaintiffs, brokers and wholesalers, had passed on terminal charges to their customers.

▮ We think the rule of damages in private antitrust actions is governed by Darnell-Taenzer, in which the Court said, "The general tendency of the law, in regard to damages, * * * is not to go beyond the first step." Without reproving the pass-on doctrine as enunciated in the Oil Jobber cases, the doctrine should be given limited application and is the exception rather than the rule.

■ In the instant cases, the district judge relied on the Hanover middleman-consumer rationale in sustaining plaintiffs' objections to the interrogatories. The judge noted plaintiffs had "consumed" the electrical equipment purchased from defendants so that no middleman relationship existed to justify the application of the pass-on defense. We believe that the applicability of the defense should not depend entirely on whether plaintiffs are classified as middlemen or consumers. Although plaintiffs unlike the oil jobbers manufactured the product they sold, an argument can be made that they passed on the overcharges through higher utility rates to their customers. For this reason, we believe that the distinction drawn by the district judge between the instant cases and the Oil Jobber cases is not as logical or economically valid as it may seem and is not the only factor to be considered in determining whether the pass-on defense is applicable.

The Oil Jobber cases held that the jobbers had not suffered injury in their business or property because they had passed on their increased costs immediately to their customers. This holding necessarily implies that the service stations or at least the ultimate consumers of the gasoline had independent rights under the antitrust laws to recover damages resulting from the price fixing activities of the oil companies. In Clark Oil, supra, the court noted that the Clayton Act does not limit recovery "to persons in privity with the wrongdoer, but is given to anyone who has suffered injury to his business or property by reason of the wrongful acts." Since the ultimate consumers presumably had independent rights to recover from the oil companies, permitting the jobbers to recover would have subjected the defendants to multiple liability.

■ In the instant cases, the possibilities of plaintiffs' present and future customers recovering against defendants are nonexistent. In our prior decision in these cases denying intervention by the State of Illinois in behalf of the consumers, Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., 315 F.2d 564 (7th Cir.), cert. denied, 375 U.S. 834, 84 S.Ct. 64, 11 L.Ed.2d 64 (1963), we said: "The alleged conspiracies spent themselves on these purchasers [plaintiffs]. The aftereffects of the hurt on the consumers are consequential and too remote for the consumers to gain rights against the conspirators." The risk of multiple liability on the part of defendants has been excluded. To apply the pass-on defense in these circumstances would be tantamount to immunizing defendants from liability.

The immunization of defendants from liability would frustrate the purposes of the antitrust laws. Section 4 of the Clayton Act was designed not only to vindicate private wrongs but to aid enforcement of the antitrust laws. United States v. Borden, 347 U.S. 514, 74 S.Ct. 703, 98 L.Ed. 903 (1954). The deterrent effect inherent in private treble damage actions would be destroyed if the non-liability rule for which defendants contend were recognized.

Even if we were to ignore the holding in our prior decision, other factors would preclude the application of the pass-on defense in these cases.

Costs of equipment used by a public utility are taken into consideration in setting rates by including the costs in the annual depreciation of the equipment. The overcharges, paid by plaintiffs and which defendants contend were passed on through an increased rate, were allocable by way of depreciation over the entire life of the equipment purchased from defendants. Even if it were possible to trace the excess in prices in the rate structure, plaintiffs' customers by paying higher rates have absorbed only part of the overcharges. The difficulties are apparent in determining to what extent the rates reflect the overcharges as well as what part of the excess prices has already been passed on to the consumers. To permit the pass-on defense to be interposed in these circumstances would be inconsistent with practical realities.

Defendants argue that, if plaintiffs are permitted to recover treble damages to the extent of the amount passed on to their customers, plaintiffs will receive a windfall. As the judge in Atlantic City Elec. Co. v. General Elec. Co., 226 F.Supp. 59 (S.D.N.Y.1964), observed, if there is to be a windfall, plaintiffs as innocent purchasers should receive it rather than defendants.

Thus, we think it is proper that policy and practical considerations be considered in deciding whether a pass-on defense should have been allowed in these cases.

The order of the district court is affirmed.