STATE OF ILLINOIS et al.,
Plaintiffs-Appellants,

v.

AMPRESS BRICK COMPANY, INC., et
al., Defendants-Appellees.

No. 75–1561.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 22, 1976.

Decided June 22, 1976.

Lee A. Freeman, Jr., Chicago, Ill., John P. Meyer, Danville, Ill., for plaintiffs-appellants.

Earl E. Pollock, Thomas W. Johnston, Edward H. Hatton, Richard L. Reinish, Chicago, Ill., James P. Morgan, Western Springs, Ill., Michael J. Guinan, Thomas F. Carey, George B. Collins, John Edward Burke, Samuel J. Betar, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and CUMMINGS and PELL, Circuit Judges.

CUMMINGS, Circuit Judge.

This treble damage antitrust action was brought by the State of Illinois on its own behalf and on behalf of various governmental entities in the Greater Chicago area.

Except for the American Brick Company[1], the eleven defendants are manufacturers of concrete block. In Count I of the complaint Illinois charged that the defendants violated Section 1 of the Sherman Act (15 U.S.C. § 1) by conspiring to fix the price of concrete block, allegedly resulting in overcharges of "an amount in excess of $3 million." Because of the treble damage provision contained in Section 4 of the Clayton Act (15 U.S.C. § 15), plaintiffs apparently sought in excess of $9 million in damages.[2]

The present lawsuit was filed after the United States had filed similar criminal and civil cases against eleven manufacturers of concrete block used in building construction in the Greater Chicago area. Pleas of *nolo contendere* were accepted in the criminal case and a consent decree was entered in the civil action. Comparable private treble damage actions brought by masonry contractors, general contractors and private builders were settled with the payment of agreed-upon sums of money. The settlements were without prejudice to this suit.

Plaintiffs assert that the defendants sold large quantities of concrete block to masonry and general contractors for incorporation in public buildings and structures. Most of the building project contracts were awarded pursuant to competitive bidding based on plans and specifications setting forth the amount and type of concrete block required. The bids submitted included the cost of the concrete block purchased from the manufacturer or masonry contractor. Thus the plaintiffs were not the first purchasers of the concrete block although they alleged that the cost of the product was passed on to them.

Defendants moved for summary judgment against all plaintiffs that were not direct purchasers of concrete block from defendants.[3] In its memorandum opinion (67 F.R.D. 461), the district court first noted that the plaintiffs did not purchase concrete block indirectly pursuant to cost-plus contracts but instead purchased buildings of which concrete block was a component part. As Judge Kirkland put it, the critical issue before him was "whether parties more remote than the direct purchaser from an alleged anti-trust violator have standing to sue under Section 4 of the Clayton Act * * *." 67 F.R.D. 464.

Citing *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231, the district court held that an immediate consumer or direct purchaser unquestionably has standing to sue the antitrust violator. 67 F.R.D. 466. However, relying upon our decision in *Commonwealth Edison v. Allis-Chalmers Mfg. Co.*, 315 F.2d 564, 567 (7th Cir. 1963), certiorari denied, *sub nom. Illinois v. Commonwealth Edison Co.*, 375 U.S. 834, 84 S.Ct. 64, 11 L.Ed.2d 64, the court held that "as to *ultimate* consumers [such as plaintiffs], their injuries are too remote and [in]consequential to provide legal standing to sue against the alleged antitrust violator." 67 F.R.D. 468. Therefore, summary judgment was granted as to this phase of defendants' motion.[4]

In private actions seeking to vindicate rights conferred by Congressional enactment, to establish standing the plaintiffs must show an injury in fact that is "arguably within the zone of interests to be regulated by the statute." *Association of Data*

---

1. American Brick Company was sued on the theory that it was a purchaser of concrete block for resale primarily from its production affiliate, Carey Brick Company.

2. In Count II, plaintiffs were two named hospitals suing also on behalf of all Chicago area private hospitals (in part supported by private funds) that were damaged by purchases of concrete block. No set damages were claimed in Count II. Summary judgment was also rendered for defendants with respect to that Count.

3. Defendants also moved for summary judgment as to direct purchasers from non-defendants. The denial of this motion is not involved in this appeal. As a result of the partial summary judgment, the claims of only four governmental entities remained in the suit.

4. Final judgment was subsequently entered thereon pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

*Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184; *Malamud v. Sinclair Oil Co.,* 521 F.2d 1142, 1151–1152 (6th Cir. 1975). The district court held that plaintiffs' interests as ultimate consumers were not protected by the antitrust laws. We disagree and therefore reverse.

■ Our holding that ultimate consumers may recover for violations of the Sherman Act is motivated by the broad language of the treble damage provision in Section 4 of the Clayton Act. It provides in pertinent part:

"*Any person* who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor * * * and shall recover threefold damages by him sustained * * * ." (15 U.S.C. § 15; emphasis supplied.)

■ The broad reach of a treble damage action under the Sherman Act was stressed in *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.,* 334 U.S. 219, 236, 68 S.Ct. 996, 1006, 92 L.Ed. 1328, where the Supreme Court noted that the Sherman Act "does not confine its protection to consumers, or to purchasers, or to competitors, or to sellers * * * . The Act is comprehensive in its terms and coverage, protecting all who are made victims of the forbidden practices by whomever they may be perpetrated." [5] No subsequent decision of that Court has confined the treble damage remedy to direct consumers. The sweeping language of the statute and the policy encouraging private enforcement of the anti-

trust laws persuade us that if plaintiffs can prove a violation which resulted in an injury to them, they ought to recover. See *Hawaii v. Standard Oil Co., supra,* 405 U.S. at 262, 92 S.Ct. 885; *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 130–131, 89 S.Ct. 1562, 23 L.Ed.2d 129.

Although the Supreme Court has not decided the issue presented here, the two courts of appeals that have squarely considered the problem have held that ultimate consumers are within the reach of the treble damage statute. In *In re Western Liquid Asphalt Cases,* 487 F.2d 191 (9th Cir. 1973), certiorari denied *sub nom. Standard Oil Co. v. Alaska,* 415 U.S. 919, 94 S.Ct. 1419, 39 L.Ed.2d 474, the Ninth Circuit noted that Congressional policy favors the allowance of recovery to plaintiffs who can prove both the occurrence of an antitrust violation and that they thereby incurred substantial damage. The Court refused to confine standing under Section 4 of the Clayton Act to first-line purchasers or more remote consumers who bought goods subject to a cost-plus contract. Similarly, in *Armco Steel Corporation v. State of North Dakota,* 376 F.2d 206 (8th Cir. 1967), the court held that because unlawfully fixed prices could injure the ultimate consumers, North Dakota should be permitted to recover $258,255 on its indirect purchases of metal products eventually used in state highways.

The District of Columbia, Second, Fourth, Fifth and possibly the Sixth Circuits also seem hospitably inclined to the rule that ultimate purchasers may sue under Section 4 of the Clayton Act to recover damages

---

**5.** See also *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 262, 92 S.Ct. 885, 31 L.Ed.2d 184; *Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co.,* 381 U.S. 311, 318, 85 S.Ct. 1473, 14 L.Ed.2d 405; *Radovich v. National Football League,* 352 U.S. 445, 454, 77 S.Ct. 390, 1 L.Ed.2d 456.

**6.** See *State of Illinois v. Bristol-Myers Co.,* 152 U.S.App.D.C. 367, 470 F.2d 1276, 1278, n. 4 (1972); *In re Master Key Antitrust Litigation,* 528 F.2d 5, 12, n. 11 (2d Cir. 1975); *South Carolina Council of Milk Producers, Inc. v. Newton,* 360 F.2d 414, 417–418 (4th Cir. 1966), certiorari denied, 385 U.S. 934, 87 S.Ct. 295, 17 L.Ed.2d 215; *Lehigh Portland Cement Co. v.*

*City of North Bay Village* (Misc. No. 2364, 5th Cir. 1972), denying appeal in *Southern General Builders, Inc. v. Maule Industries, Inc.,* 1973–1 CCH Trade Cases ¶ 74,484 (S.D.Fla.1972); *Dailey v. Quality School Plan, Inc.,* 380 F.2d 484, 487–488 (5th Cir. 1967). In a different context, the Sixth Circuit seems to lean the same way in *Malamud v. Sinclair Oil Corporation,* 521 F.2d 1142 (6th Cir. 1975). The split among the district courts was noted in *Boshes v. General Motors Corporation,* 59 F.R.D. 589, 592–593, n. 5 (N.D.Ill.1973) and in the opinion below, 67 F.R.D. at 464, n. 1. We approve of those district court decisions permitting ultimate consumers to sue antitrust violators.

incurred as a result of a price-fixing conspiracy.[6]

Analysis of defendants' cases does not lead to a different conclusion. Defendants rely primarily on *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231. In that case, the Court held that first-line purchasers could recover for antitrust violations even if the purchaser passed on the cost of the product attributable to the anticompetitive practice. 392 U.S. at 488, 88 S.Ct. 2224. However, the Court did not enshrine privity as a requirement of recovery under the antitrust laws. See *In re Western Liquid Asphalt Cases, supra*, 487 F.2d at 196–198; *Boshes v. General Motors Corporation, supra*, 59 F.R.D. 589 at 592–596. Although the Court noted that more remote purchasers might have difficulty in establishing the relationship between the antitrust violation and the injury suffered, we do not believe *Hanover Shoe* precludes those purchasers from ever recovering.

The Third Circuit's *per curiam* opinion in *Mangano v. American Radiator & Standard Sanitary Corp.*, 438 F.2d 1187 (1971), is cited by defendants in favor of the summary judgment below. However, a careful reading of *Mangano* shows that the affirmance was based on "the district court's sound discretion to dismiss the actions of the present appellants solely for inexcusable failure to answer interrogatories" (438 F.2d at 1188). More significantly, the failure to answer the interrogatories revealed plaintiffs' inability to show that the alleged antitrust violations were the proximate cause of the injury to the plaintiffs.[7]

Our decision in *Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., supra*, is distinguishable on an identical rationale. In part, that decision was based on *Keogh v. Chicago & North Western Railway Co.*, 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183, which held that complaints against legally established regulated rates must first be addressed to the regulatory agency. 315 F.2d at 567. See *United States v. Radio Corporation of America*, 358 U.S. 334, 346–347, 79 S.Ct. 457, 3 L.Ed.2d 354. However, like *Mangano*, the decision in *Commonwealth Edison* also rests on the failure to prove that the violations damaged the plaintiffs. Because the rates were set by an independent regulatory agency, plaintiffs could not show that the allegedly inflated prices for the generators resulted in higher prices for the electricity produced. In the next consideration of Commonwealth Edison's antitrust claim, the author of our previous opinion approved the rule of *Clark Oil Co. v. Phillips Petroleum Co.*, 148 F.2d 580 (8th Cir. 1945), certiorari denied, 326 U.S. 734, 66 S.Ct. 42, 90 L.Ed. 437, that the Clayton Act permits ultimate consumers to recover from antitrust violators, thereby refuting defendants' interpretation of our prior holding. *Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co.*, 335 F.2d 203, 208 (7th Cir. 1964); see also *Boshes v. General Motors Corporation, supra*, 59 F.R.D. at 597, n. 10.

The error in defendants' reading of *Hanover Shoe, Mangano*, and *Commonwealth Edison* is that they view the failure to show that antitrust violations caused plaintiffs' injury as an element of standing. It is not. Rather, the question is one of fact (*Perkins v. Standard Oil Co.*, 395 U.S. 642, 648, 89 S.Ct. 1871, 23 L.Ed.2d 599; *In re Western Liquid Asphalt Cases, supra*, 487 F.2d at 199), and any decision thereon is an adjudication on the merits. Cf. *Sierra Club v. Morton*, 405 U.S. 727, 741, 92 S.Ct. 1361, 31 L.Ed.2d 636. Although in *Mangano* and *Commonwealth Edison* the facts were sufficiently clear early in the litigation to permit resolution of the case on a motion to dismiss or for summary judgment, in the instant case they are not.

We do not believe that the difficulty plaintiffs might have in proving the injury requires us to dismiss the suit. Nor do we

---

7. To the extent that there is dicta that only the first consumers in a chain of distribution may sue under Section 4 of the Clayton Act, we respectfully disagree with the Third Circuit.

believe that dismissal is warranted because both the immediate purchasers and the plaintiffs in this case might recover damages from the defendants. As Judge Carter pointed out in *In re Western Liquid Asphalt Cases, supra*, 487 F.2d at 200–201, according standing to ultimate purchasers need not result in double recovery because appropriate means can be found to apportion any damages that might be assessed.

To the extent that the district court held that these plaintiffs, as opposed to ultimate consumers in general, lack standing, we disagree. The plaintiffs here have alleged an injury in fact and are within the target area of the Sherman and Clayton Acts. They have shown that they were "within the area of the economy which [defendants] reasonably could have or did foresee would be endangered by the breakdown of competitive conditions." *In re Western Liquid Asphalt Cases, supra*, 487 F.2d 199.

The judgment below is reversed insofar as it grants summary judgment on Counts I and II against indirect purchasers of concrete block, with costs to plaintiffs-appellants.