James A. BUCHANAN, Plaintiff,

v.

Ben LEONARD, Reuben Orville Wiebold and Earl Barker Bartlett, Defendants.

Civil No. 4286.

United States District Court, D. Colorado.

Dec. 15, 1954.

Baxter Arnold, H. Vance Austin, Sterling, Colo., and Mansur Tinsley, Pile & Tinsley, Lakewood, Colo., for plaintiff.

Ward W. Minor, Minor & Minor, Kearney, Neb., Forrest C. O'Dell, Wolvington & Wormwood, Denver, Colo., for defendants Leonard and Wiebold.

Walter A. Steele, White & Steele, Denver, Colo., for defendant Bartlett.

CHRISTENSON, District Judge.

In this case I already have determined that the defendants, Reuben Orville Wiebold and Earl Barber Bartlett, were guilty of negligence, proximately causing damage to the plaintiff, and that Wiebold's negligence is imputable to the defendant Leonard by reason of the relationship of servant and master existing between them; that the cross-claims between Leonard and Reuben Orville Wiebold on the one hand and Earl Barber Bartlett on the other, are barred by the contributory negligence of each; that the doctrine of last clear chance under the facts is not available to assist either defendant, and that defendants Leonard and Wiebold are not entitled to claimed indemnity as against the other defendant. The reasons for these conclusions were indicated in an oral decision at the close of the trial and will not be here repeated.

Formal findings of fact in line with the oral decision will dispose of all issues except as to the amount of damages to which plaintiff is entitled. On the latter point I indicated that I would allow $3,450 as damage to plaintiff's tractor and $110 for repairs to plaintiff's trailer, and that I would give further consideration to plaintiff's claim for equipment rental and loss of profits allegedly resulting from defendants' negligence. I also reserved the question of interest on plaintiff's award.

The evidence shows that plaintiff's equipment was damaged on November 21, 1952. Plaintiff's tractor-cab was mashed flat, and except for a salvage value of $500, was a total loss. It was of a reasonable market value of $3,950 immediately prior to the collision. The reasonable cost of repairs to the trailer was $110. Thus, the direct property damage amounted to $3,560. In addition to this, however, plaintiff claims special damages for loss of profits and equipment rental expense.

At the time of the collision, plaintiff was engaged in performing a contract for hauling pipe. The haul at that particular time, was of 8-inch pipe, which plaintiff claimed involved his most profitable trips. Later trips, involving 6-inch and 4-inch pipe, while required by the contract, did not bring as great a daily return as the hauls were longer. Plaintiff was using a number of units in the performance of this contract, of which the tractor-trailer in question in this case was one.

Plaintiff attempted to buy a new tractor, but despite reasonable efforts, did not succeed in locating one until about December 2, 1952. The necessary repairs to the trailer took four days to make. Plaintiff testified that he hoped to be able to keep his contract up to date without renting other equipment in spite of the delay in repairing his tractor, but by December sixteenth it became apparent to him that this was not possible. He, therefore, rented one tractor-trailer unit for six days and another similar unit for four or five days. Up to that time he had fallen behind in the performance of his contract about seven truck days, but with the aid of the rented equipment he was able to reduce the delay to three and a half truck days, his extra loss on account thereof being about $794.50 according to his claim at the trial.

These lost "profits" were calculated on the 8-inch pipe haul notwithstanding that the entire contract, including less profitable hauls, had to be completed by him within a reasonable time. Plaintiff claimed for truck rental eleven truck days or a total of $1,442, and three and one-half days lost profits (or, as expressed in the argument, extra operating expense) totaling $794.50.

The theory apparently was that in addition to the truck rental, plaintiff would be entitled to lost expense (or profits) because the trucks were rented after the most profitable period of the contract had passed, and the rental of the extra trucks did not enable the plaintiff to recoup entirely the ground

lost in performance. Counsel for the other parties during the oral argument indicated uncertainty concerning plaintiff's theory in drawing a distinction between various phases of the pipe hauling contract. However, it seems that such a distinction was an attempt to justify damages beyond truck rentals. The truck days for which rental was paid were approximately equivalent to the period during which plaintiff was looking for a new truck.

In any event, I cannot subscribe to plaintiff's theory that he is entitled to special damages in addition to truck rentals. I believe he is entitled to the amounts expended for such rentals despite some unsatisfactory aspects of the proof on this point.

■ In the case of Parks v. Sullivan, 46 Colo. 340, 104 P. 1035, 1036, 25 L.R.A.,N.S., 625, the Colorado Supreme Court expressed the general rule that for the destruction of property the measure of damages is the value of the property at the time of its destruction with interest on that amount. A subsidiary rule is therein indicated to the effect that if by reason of the loss of property, plaintiff is unable to perform a contract within the time prescribed, or if other circumstances warrant, "the court would probably award consequential damages." The Colorado Supreme Court determined, however, that the evidence did not justify the award of consequential damages under the particular circumstances there involved, and therefore reversed.

The old, and perhaps still the generally prevailing, rule, contrary to the indication in the Parks case, is that where there has been a complete destruction of personal property through the negligence of another, recovery is limited to the value of the property. Annotation 169 A.L.R. 1074 et seq. This rule would preclude recovery of consequential damages by plaintiff in addition to the value of the tractor which was substantially destroyed and for which

repair was impracticable, unless the circumstances of the trailer's being subject to repair would bring the case within the rule of Kohl v. Arp, 236 Iowa 31, 17 N.W.2d 824, 169 A.L.R. 1067, wherein the partial destruction of one part of an integrated unit will permit the application to the whole unit of the partial destruction rule. This application seems doubtful under the facts of the case at bar, but I do not consider it necessary to pass upon this point.

In addition to the indication in the Parks case mentioned above, I believe the better modern rule permits recovery of consequential damages in this case despite substantial destruction of the tractor-trailer and that justice will be subserved thereby. The rule as stated in Restatement Torts, Sec. 927, and the reasoning applying such rule in the case of Guido v. Hudson Transit Lines, Inc., 3 Cir., 1950, 178 F.2d 740, are persuasive upon me, particularly in view of the fact that my attention has not been called to a Colorado decision overruling Parks v. Sullivan, supra.

■ If consequential damages are to be allowed, what does the evidence justify? I believe that the rental paid for similar equipment can and should be allowed. Plaintiff paid $1,442 for the rental of other trucks for periods aggregating about eleven truck days, and there is evidence from which the Court reasonably can infer that this was the reasonable market value of the use of such trucks corresponding to the reasonable market value of the use of plaintiff's equipment for like periods. Plaintiff's right to recover these rentals is not defeated by the fact that they were incurred in December rather than immediately following the damage. In my view, the plaintiff had an indivisable pipe hauling contract to perform and did in fact hire replacement trucks during the course of such performance for a period roughly corresponding to the period required to obtain replacement equipment. Moreover, even though we should assume the later truck rental

could not be looked to except as an indication of the rental for which substitute trucks might be procured, still the measure of special damage would be reasonable rental value, whether other trucks were actually rented or not. Meyers v. Bradford, 54 Cal.App. 157, 201 P. 471; Guido v. Hudson Transit Lines, Inc., supra.

■ However, the truck rentals paid included compensation for gas, oil and operators, the value of which should be deducted from the amounts to which plaintiff otherwise could be entitled. Gas and oil for eleven days would cost $220 and the salary paid to plaintiff's regular truck driver who, during the time plaintiff's equipment was out of commission, performed other services in and about plaintiff's business, was $131.28 per week or $206.25 for eleven days. This leaves a net rental, reasonably necessitated by defendants' negligence, of $1,015.75 for which plaintiff is entitled to judgment.

To permit plaintiff to recover not only this, but also claimed loss of profits resulting from the fact that plaintiff hired the other trucks in December, when less productive hauls were being made rather than in November immediately following the damage, would run counter to the reasoning in Parks v. Sullivan, supra, and would constitute an award of claimed consequential damages based on uncertain, conjectural and speculative losses, contrary to the doctrine of United States v. Griffith, Gornall & Carman, Inc., 10 Cir., 1954, 210 F.2d 11. In addition, plaintiff should not be permitted to play "double or nothing" solely at defendants' risk, which would be the case were he able to delay hiring of replacement equipment with the assurance that he not only would recoup any extra loss resulting from such delay, but would be assured recovery in any event of the rents belatedly paid out.

■ Now as to interest: under the Colorado statute interest as such ordinarily is not recoverable on unliquidated damages. 75–1–1, C.S.A.1953; Schlottman v. Pressey, 10 Cir., 195 F.2d 343; Mitton v. Granite State Fire Ins. Co., 10 Cir., 1952, 196 F.2d 988; Pearl Assur. Co. v. School Dist. No. 1 in San Miguel County, Colo., 10 Cir., 1954, 212 F.2d 778. However, it is also well settled that even as to unliquidated demands, in the absence of an authoritative state decision to the contrary, the Court in its sound discretion can award interest, or its equivalent, as an element of damages. Concordia Ins. Co. of Milwaukee v. School District No. 98 of Payne County, Okl., 282 U.S. 545, 51 S.Ct. 275, 75 L.Ed. 528; St. Paul Mercury Indemnity Co. v. United States, 10 Cir., 1952, 201 F.2d 57. Thus, in Robberson Steel Co. v. Harrell, 10 Cir., 177 F.2d 12, this circuit pointed out that compensation is a fundamental principle of damages whether the action be in contract or tort, and while conceding that interest on unliquidated demands as such was not allowable under the laws of Oklahoma, wherein the action arose, determined that the Court may, in the exercise of a sound discretion, include interest, or its equivalent, as an element of damages when it is necessary to arrive at fair compensation.

■ In this case, I believe that the equivalent of interest should be included in the award to plaintiff in order to arrive at fair compensation. There has been no protracted delay by plaintiff in asserting or maintaining his claim. His right to recover is reasonably clear. He sought to, and did to an extent, minimize his damage by an outlay of money for rent of substitute equipment. He proceeded with reasonable dispatch in providing permanent replacement equipment. I did not feel justified in awarding exemplary damages, although the acts of negligence upon which liability was predicated were marked, if not wanton. But I do believe that I unjustifiably would be denying full compensation to plaintiff if, under the facts of

this particular case, I did not include in the judgment an amount equivalent to interest. I therefore direct that there be included in the judgment an amount equal to 6% of the principal award of $4,675.75, to run from December 24, 1952, when all special as well as general damages of plaintiff had been fully incurred. Parks v. Sullivan, supra, seems to indicate the right to award interest in this type of case. If it does not, fundamentals of fair compensation do, and there seems to be no authoritative state decision in this type of case which precludes it.

Plaintiff will submit to the Court, after service upon opposing parties, forms of findings of fact, conclusions of law and judgment consistent with this memorandum decision and the oral decision heretofore announced on the other points involved.