ORANGE AND ROCKLAND UTILITIES, INC., Respondent, v NEW ENGLAND PETROLEUM CORPORATION, Appellant.

First Department, December 20, 1977

### APPEARANCES OF COUNSEL

*Samuel N. Greenspoon* of counsel *(Charles G. Mills, IV,* with him on the brief; *Eaton, Van Winkle, Greenspoon & Grutman,* attorneys), for appellant.

*Andrew Gansberg* of counsel *(Taylor R. Briggs* with him on the brief; *Le Boeuf, Lamb, Leiby & MacRae,* attorneys), for respondent.

*Peter H. Schiff* for Public Service Commission, *amicus curiae.*

### OPINION OF THE COURT

LYNCH, J.

Appellant New England Petroleum Corporation (NEPCO) contracted to deliver fuel oil to respondent Orange and Rockland Utilities, Inc. (Orange), a public utility. In this action to recover alleged overcharges Orange does not dispute that, pursuant to its rate structure on file with the Public Service Commission, it is able, after a two-month time lag, to pass along the overcharges to its customers. It is computed that the maximum pecuniary damage to an average residential customer would be $4.38.

NEPCO's fifth defense alleges that Orange, being able to pass on all overcharges, suffered no damage. Special Term granted Orange's motion to dismiss that defense for lack of merit and denied NEPCO's motion, based on the same defense, for summary judgment dismissing the complaint. The court's decision, admittedly without precedent, reasoned that "as a matter of this State's public policy a State Court may not recognize the 'passing on' defense when asserted against a State regulated utility".

On appeal NEPCO argues from New York and Federal decisions that a purchaser of goods cannot recover from a seller when the goods purchased are resold at a formula which

automatically includes any overcharge, and that, contrary to the reasoning of Special Term, Orange's public utility status is irrelevant since any law that would favor it as a purchaser would be unconstitutional as violative of the equal protection clause.

■ NEPCO relies on New York law that holds that the measure of damages for a breach of contract is the loss incurred by or gain denied to the plaintiff and not the gain realized by the defendant, citing *Simon v Electrospace Corp.* (28 NY2d 136), *Mutual Life Ins. Co. v Tailored Woman* (283 App Div 173, affd 309 NY 248) and *Odysseys Unlimited v Astral Travel Serv.* (77 Misc 2d 502). It asserts that similar law gave rise to a line of Federal decisions known as the "oil jobber" cases that hold that wholesalers who purchase gasoline from refineries at illegally fixed prices cannot recover from the refineries when they have resold the gasoline to service station owners at cost plus a fixed markup. (See *Clark Oil Co. v Phillips Petroleum Co.,* 148 F2d 580, cert den 326 US 734; *Northwestern Oil Co. v Socony-Vacuum Oil Co.,* 138 F2d 967, cert den 321 US 792; *Leonard v Socony-Vacuum Oil Co.,* 42 F Supp 369, app dsmd 130 F2d 535; *McCain v Socony-Vacuum Oil Co.,* 64 F Supp 12; *Twin Ports Oil Co. v Pure Oil Co.,* 119 F2d 747, cert den 314 US 644.) NEPCO finds the oil jobber cases in point but we cannot agree.

■■ While it cannot be denied that a plaintiff's loss is the measure of damages for a breach of contract, the New York law contains an additional element overlooked by NEPCO— the damages are to be measured at the time of the breach. It is then, not at a future time, that the loss is fixed *(Simon v Electrospace Corp.,* 28 NY2d 136, 145, *supra).* Furthermore, the justification for the oil jobber cases is not found in a law similar to that relied upon by NEPCO but lies in the exigencies arising from their being antitrust actions. *Commonwealth Edison Co. v Allis-Chalmers Mfg. Co.* (335 F2d 203) points out that, because the refineries actually set the price for the service station owners, with the jobber between them allowed only a fixed percentage, there would be antitrust liability from refinery directly to owner, with the risk of multiple liability were an antitrust suit by a jobber not precluded by the allowance of a pass-on defense. *Commonwealth,* even though it involved antitrust activity, rejected the pass-on defense and declared (p 207) that the oil jobber "doctrine should be given limited application and is the exception rather than the rule".

Four years later, the Supreme Court in *Hanover Shoe v United Shoe Mach.* (392 US 481), although aware of the oil jobber holding, did not follow it and may well have given it the *coup de grace.* (See *Illinois Brick Co. v Illinois,* 431 US 720.) Like the oil jobber cases, *Hanover Shoe* arose from antitrust liability but, unlike them, rejected a pass-on defense, utilizing a reason having force here when one recalls Orange's residential customer having a maximum possible loss of $4.38. "[I]f buyers are subjected to the passing-on defense, those who buy from them would also have to meet the challenge that they passed on the higher price to *their* customers. These ultimate consumers, in today's case the buyers of single pairs of shoes, would have only a tiny stake in a lawsuit and little interest in attempting a class action. In consequence, those who violate the antitrust laws by price fixing or monopolizing would retain the fruits of their illegality because no one was available who would bring suit against them" (p 494).

Apart from the now-questioned oil jobber doctrine, Federal law has developed similarly to New York in that it measures damages from the time of the breach "and it does not inquire into later events" *(Southern Pacific Co. v Darnell-Taenzer Co.,* 245 US 531, 534), and pass-on defenses have been rejected on the principle enunciated in *Darnell-Taenzer* where public utilities have sought to recover overcharges from suppliers *(Commonwealth Edison Co. v Allis-Chalmers Mfg. Co., supra; Atlantic City Elec. Co. v General Elec. Co.,* 226 F Supp 59, app den 337 F2d 844; *Ohio Val. Elec. Corp. v General Elec. Co.,* 244 F Supp 914; *Public Utility Dist. No. 1 v General Elec. Co.,* 230 F Supp 744).

NEPCO would overturn this established law on the basis of obiter dictum culled from *Hanover Shoe (supra,* p 494): "We recognize that there might be situations—for instance, when an overcharged buyer has a pre-existing 'cost-plus' contract, thus making it easy to prove that he has not been damaged— where considerations requiring that the passing-on defense not be permitted in this case would not be present."

We cannot accept NEPCO's interpretation that this would authorize a pass-on defense whenever there is a pre-existing cost-plus contract (or a pre-existing rate structure permitting later recovery of increased costs). We construe the court's meaning to be that where none of the considerations bearing upon the decision in *Hanover Shoe* is present a pass-on defense might be permitted. But here we have a consideration

identical to one found in *Hanover Shoe,* that, were a pass-on defense permitted, a supplier could breach his contract with impunity because, for lack of substantial pecuniary interest, no one would be available to bring suit against him.

We note, too, that, even if the dictum of *Hanover Shoe* had the meaning NEPCO would ascribe to it, the case lies in antitrust, a field for Federal action; that the instant case involves damages arising from breach of contract, a common-law issue free of any Federal question that would impose upon us the constraint of a Federal court *(People ex rel. Central Park, North & East Riv. R. R. Co. v Willcox,* 194 NY 383; see, also, 21 CJS, Courts, § 205).

■ Considered without reference to Orange's status as a public utility, we must conclude that the pass-on defense lacks merit and, since the pertinent law is applicable to all, NEP-CO's argument of unconstitutional favoritism shown to public utilities also must fail.

Orders, Supreme Court, New York County (ROSENBERG, J.) entered September 24, 1976, granting plaintiff's motion to dismiss the defendant's fifth affirmative defense should be affirmed, with costs and disbursements.

KUPFERMAN, J. P., EVANS and CAPOZZOLI, JJ., concur.

Orders, Supreme Court, New York County both entered on September 24, 1976, so far as appealed from, unanimously affirmed. Respondent shall recover of appellant $60 costs and disbursements.