■ CASTLE COAL & OIL CO., INC., Respondent, v FRANK'S FUEL, INC., Appellant.—Order of the Supreme Court, Bronx County, entered January 26, 1978, granting plaintiff summary judgment and dismissing defendant's second counterclaim, and the judgment entered thereon, modified, on the law, to the extent of reversing that part of the order and judgment which granted summary judgment to plaintiff on its complaint and denying plaintiff's motion for such relief, and, as so modified, the order and judgment are affirmed, without costs. The controversy here in question arises out of the exchange of 58,000 barrels of No. 6 fuel oil. By letter agreement dated

October 16, 1973, defendant agreed to deliver oil to plaintiff at "Metropolitan's terminal in Bayonne, New Jersey". Plaintiff agreed to return the oil to defendant during the last week in December, 1973, at Tappan Terminal in Hastings. The price to be paid by defendant was to be "EXXON New York harbor barge reseller's price as posted in the New York Journal of Commerce at the time of delivery" and included transportation costs. By letter dated October 26, 1973, a rider was attached reiterating the time for the redelivery of the oil to defendant as the last week in December, 1973 and providing that defendant would pay the cost of such redelivery. The action is to recover the price of the oil so redelivered. Defendant delivered the oil to plaintiff in October, 1973. The loading and delivery documents show a discrepancy between the number of barrels loaded and the number of barrels discharged. It is this discrepancy which gives rise to the second counterclaim. Section 2-401 (subd [2], par [b]) of the Uniform Commercial Code provides that, in the absence of explicit agreement to the contrary, title to goods passes at the time of delivery if the contract requires delivery at destination. Here, such delivery was specified. Hence, until delivery, risk of loss remained with defendant. Accordingly, Special Term, decided, quite properly, that the counterclaim ought be dismissed. A wholly different question is presented by the main action. Under the agreement, plaintiff was to return the oil the last week in December, 1973. In fact, it made delivery on January 9, February 4 and February 9, 1974. By failing to make delivery at the time specified, plaintiff may have breached its agreement. Ordinarily, the measure of damages for this breach would have been the loss sustained by defendant at the time and place of breach (*Simon v Electrospace Corp.*, 28 NY2d 136). If the oil was available in the open market in December, 1973, and had defendant then purchased it, it would have suffered no loss. However, these were not ordinary times. The Arab oil boycott was fully operative. On January 11, 1974, the price of the oil in question jumped more than $4.00 a barrel. This increase in price forms the basis of the controversy. The record is barren of any indication of market conditions at the time, nor is there any indication of whether premium prices would have had to be paid. Furthermore, there is nothing before us from which we can determine whether the parties considered time to be of the essence and the effect thereof upon the price of the oil to be delivered. Finally, the conditions then obtaining in the industry are not depicted with sufficient clarity to enable us to determine the applicability of *Orange & Rockland Utilities v New England Petroleum Corp.* (60 AD2d 233) to the facts here presented. In these circumstances, there remain issues of fact which require a trial for determination. Concur—Birns, J. P., Sandler, Bloom, Lupiano and Silverman, JJ.