**PROSPERO ASSOCIATES, a Colorado general partnership, Raymond S. Livingstone, Jr., and Kent M. Klineman, Plaintiffs-Appellees and Cross-Appellants,**

v.

**REDACTRON CORPORATION and Burroughs Corporation, Defendants-Appellants and Cross-Appellees.**

No. 80CA0993.

Colorado Court of Appeals, Div. III.

Sept. 29, 1983.

Rehearing Denied Oct. 27, 1983.

Certiorari Denied May 7, 1984.

Holme, Roberts & Owen, Donald K. Bain, Jeffrey A. Chase, Denver, Kronish, Lieb, Shainswit, Weiner & Hellman, Adam Walinsky, Laurence J. Kaiser, New York City, for plaintiffs-appellees and cross-appellants.

Rothgerber, Appel & Powers, Ira C. Rothgerber, Jr., Robert S. Slosky, Stephen T. Johnson, Denver, for defendants-appellants and cross-appellees.

KELLY, Judge.

Defendants, Redactron Corporation and Burroughs Corporation, appeal the trial court's judgment that Redactron anticipatorily breached its contract with plaintiff, Prospero Associates, and that Burroughs tortiously interfered and induced the breach. Defendants argue that the trial court erred in its findings that Redactron anticipatorily breached, that Prospero was ready, able, and willing to perform its contractual obligations, and that Burroughs tortiously interfered and induced the breach. They further argue that the trial court improperly measured damages under New York common law rather than the Uniform Commercial Code, and that the award of attorneys' fees was improper. Prospero cross-appeals, arguing that the trial court erroneously failed to award moratory interest. We affirm in part and reverse in part.

Prospero is a Colorado partnership formed by Raymond S. Livingstone, Jr., and Kent M. Klineman for the purpose of entering into third-party leasing transactions with manufacturers of computer and computer-related equipment. Redactron manufactured word processing typewriters.

.The contract which is the source of this litigation was a third-party non-full-payout leasing transaction consisting of a Purchase Agreement, an Agency Agreement

under which Livingstone and Klineman would receive commissions for bringing about the deal, and a Warrant Agreement under which Livingstone and Klineman would be entitled to purchase Redactron stock.

Under the Purchase Agreement, which is the focal point in this case, Redactron obtained the right to sell Prospero up to four million dollars of equipment during each of three contract years. Equipment purchased by Prospero was subject to third-party leases, and Redactron would continue to collect rent, service the equipment, and remarket the equipment as the leases terminated. The Purchase Agreement was to serve essentially as a financing device. Redactron's financial status precluded further bank financing, and the Purchase Agreement would benefit Redactron by generating cash otherwise unobtainable.

The gravamen of the Purchase Agreement was the reporting obligation detailed in Section 4.1.2 which required that Redactron send Prospero monthly statements specifying "in such detail as Buyer may reasonably request" certain financial information concerning the machines and concerning Redactron, and "such additional information and reports, in such detail, as Buyer may reasonably request."

Thus, Redactron was required under the contract to provide Prospero with all information deemed reasonably necessary by Prospero in making its decision whether to exercise its option to continue the contract in each successive contract year. The trial court found that the reports required under Section 4.1.2 were considered essential by Prospero both for its own decision-making and because its bank required such reports before extending the credit to Prospero necessary for the purchase of Redactron equipment.

The Purchase Agreement also contained a provision granting to Prospero the exclusive option either to terminate the contract at the end of any contract year or extend the contract for a second or third year by notifying Redactron in writing of such intention by May 1 or within fifteen days after receipt of the reasonably requested data, whichever came last. The contracts expressly provided that any disputes would be settled under New York law.

Near the end of the first contract year, in order to decide whether to exercise its option for a second contract year, Prospero requested various financial information relating both to Redactron's financial status and to the machines. In the meantime, Redactron was experiencing severe financial difficulties and decided to seek a merger. Without notifying Prospero, Redactron began negotiations and ultimately reached agreement on a merger with Burroughs.

Burroughs, however, considered the Prospero contract to be an impediment to merger since it was able to provide financing to Redactron at a much lesser expense. As the trial court found, Redactron's posture was, therefore, that of needing the Prospero contract in the event no merger took place, and needing to absolve itself of the Prospero contract in the event a merger with Burroughs was otherwise feasible.

The trial court found that Burroughs induced Redactron to delay production of the information requested by Prospero until the date passed on which Prospero was required to make its election under the option (May 1). Redactron believed it could then terminate the contract should the merger reach fruition, or provide the information to Prospero should the merger fail, knowing that Prospero probably would exercise its option.

Prospero's requests for information continued to meet with promises of imminent performance, but in fact the requested information was never supplied. On July 30, 1975, Redactron and Burroughs executed an interim agreement to merge. Redactron then informed Prospero by letter that since Prospero had not notified Redactron of its election to extend the contract under the provisions of the Purchase Agreement, the contract was terminated.

As a result of Redactron's termination of the contract, Livingstone and Klineman were denied commissions due them under

the Agency Agreement, and Prospero was denied the benefits of the second contract year under the Purchase Agreement. The trial court ruled that Redactron had breached the Agency Agreement and the Purchase Agreement, and that Burroughs had induced the breaches, and awarded damages. This appeal followed.

## I.

Redactron argues that the trial court erred in finding that it anticipatorily breached the contract. It argues further that Prospero was not financially able to perform its obligations had it elected to extend the contract and that Prospero was, therefore, not ready, able, and willing to perform. Burroughs argues that the trial court erred in finding that it induced Redactron's breach.

After a four-week trial, the trial court found, in extensive findings of fact and conclusions of law, that the information requested was essential to Prospero's decision whether to extend the contract, that such information was reasonably requested by Prospero and reasonably available to Redactron, that Redactron continually promised to provide such information but failed to do so, and that, under the terms of the Purchase Agreement, Prospero was not obligated to make its election until fifteen days after receipt of all such information. Since the information was not provided, Prospero had not forfeited its option rights.

The court also found that, had it elected to extend the contract, Prospero was ready, able, and willing to perform its obligations. Redactron argues that the only evidence that Prospero was able to raise the necessary capital is speculation that an increased line of credit was soon to be agreed upon between Prospero and its bank, and that such speculative evidence is insufficient to establish the ability to perform.

The commitment letter from Prospero's bank for a term loan of $3.5 million expressly contemplated increasing Prospero's credit to a $50 million revolving credit account. Moreover, even if the increased credit were not forthcoming, the trial court

found that Prospero had borrowed only $2.2 million in the first year and that the second year's purchases would have been financed primarily through the cash flow generated by the leased equipment. In short, the evidence in the record supports the trial court's finding that Prospero intended to extend the contract for another year and that funds were available to purchase the $3.1 million worth of equipment called for in the second contract year.

■ The trial court found that:

"Burroughs, with knowledge of Redactron's contractual obligations, actively persuaded Redactron to breach the Purchase and Agency Agreements for the second contract year by offering Redactron the incentive of merger with the intent that Redactron act upon its suasions."

There is ample evidence in the record, and the court's findings, based primarily on the credibility of Livingstone, cannot be disturbed by this court unless clearly erroneous. *Thiele v. State,* 30 Colo.App. 491, 495 P.2d 558 (1972). For the foregoing reasons, we find defendants' arguments on the insufficiency of the evidence to be without merit.

## II.

Defendants contend that the trial court erred in measuring damages for breach of contract under New York common law rather than the New York Uniform Commercial Code (UCC).

Defendants' claim is premised on the assertion that the contract was a sale of goods: typewriters in exchange for cash, rather than a financing device where the actual sale was of subordinate importance relative to the service and remarketing aspects of the contract.

The trial court found this hybrid sales-service transaction to be predominantly a financing device. Since the lessees of the machines would be totally unaffected by, and indeed unaware of, the change in ownership of the machines in their possession, the only effect occasioned by the sale was

that Redactron would receive cash based on Prospero's credit, otherwise unavailable to Redactron, and in return, Prospero would receive rents and commissions on the equipment. The essential element of the contract was that Redactron would continue to service and remarket the equipment and collect rents thereon. Since only Redactron, as the manufacturer of the machines, was able to provide these services, their inclusion was the *sine qua non* of the transaction.

■ It is the law of New York that, in a mixed sales-services transaction, the contract must be examined both pragmatically and legally to determine the predominant feature. Where, as here, the services portion of the contract is not "incidental or collateral to the sale of goods," the transaction is not subject to the UCC. *Dynamics Corp. of America v. International Harvester Co.,* 429 F.Supp. 341 (S.D.N.Y.1977); *Milau Associates, Inc. v. North Avenue Development Corp.,* 42 N.Y.2d 482, 398 N.Y.S.2d 882, 368 N.E.2d 1247 (1977); *Accord Bonebrake v. Cox,* 499 F.2d 951, 960 (8th Cir.1974). Thus, we agree with the trial court's conclusion that this hybrid transaction is governed not by the UCC, but by the law of contract damages in the State of New York.

Redactron further argues that it should have been allowed to introduce at trial evidence showing a subsequent decline in the market for leased equipment, and that lost profits are not recoverable in contract damages in New York. These arguments are without merit.

Prospero relies primarily on *Masterton v. Mayor of Brooklyn,* 7 Hill 61 (1845), for the proposition that damages "are to be settled and ascertained as of the existing state of the market at the time the cause of action arose." Redactron challenges the continued vitality of this opinion and asserts that *Masterton* denies consequential damages for breach of contract.

■ *Masterton,* as well as more recent cases, establishes that market fluctuations after the contract is breached are not rele-

vant in measuring contract damages which are measured at the time of the breach. Moreover, lost profits, which are consequential damages, are a valid measure of damages to the buyer, indeed often the only measure of damages. *See Robert R. Scott Corp. v. D. Kwitman & Son, Inc.,* 3 Misc.2d 812, 146 N.Y.S.2d 518 (App.Term 1955); *Orange & Rockland Utilities v. New England Petroleum Corp.,* 60 A.D.2d 233, 400 N.Y.S.2d 79 (1st Dep't 1977). These propositions are, as Prospero asserts, basic Hornbook principles of law, known even in New York.

■ The trial court properly measured damages from the time of breach, excluded evidence of subsequent market fluctuations, and included consequential damages in the damages award.

### III.

Defendants contend that the trial court erred in awarding attorneys' fees, arguing that Colorado law should have governed this issue rather than New York law, that attorneys' fees are not a measure of damages in a tortious interference case unless the plaintiff was required to undertake an additional lawsuit, and that in any event the amount of damages was excessive.

■ The suggestion that Colorado law should govern the award of attorneys' fees is without merit. Colorado applies the most significant contacts analysis in determining choice of law questions. *First National Bank v. Rostek,* 182 Colo. 437, 514 P.2d 314 (1973). The contract between Prospero and Redactron expressly incorporated New York law, the contract was executed in New York, and the contractual obligations were to be performed in New York. In this case New York is the state with the most significant contacts and the question of attorneys' fees and expenses is to be determined under New York law.

In ruling that plaintiffs are entitled to an award of attorneys' fees in cases of tortious interference with contract, the trial court relied on the leading New York case of *Shindler v. Lamb,* 25 Misc.2d 810, 211

N.Y.S.2d 762 (Sup.Ct.N.Y.Co.1959). *Accord International State Bank v. Trinidad Bean & Elevator Co.*, 79 Colo. 286, 245 P. 489 (1926). Thus, under New York law, attorneys' fees and expenses are an element of compensatory damages which the trial court properly awarded to Prospero against Burroughs for expenses incurred in proving Redactron's breach. *See Central Trust Co. v. Goldman*, 70 A.D.2d 767, 417 N.Y.S.2d 359 (4th Dep't), *appeal dismissed*, 47 N.Y.2d 1008, 420 N.Y.S.2d 221, 394 N.E.2d 290 (1979); *Fugazy Travel Bureau, Inc. v. Ernst & Ernst*, 31 A.D.2d 924, 298 N.Y.S.2d 519 (1st Dep't 1969); *Delehanty v. Walzer*, 59 N.Y.S.2d 777 (Sup.Ct.Kings Co.1945), *rev'd on other grounds*, 271 App.Div. 886, 67 N.Y.S.2d 25 (1946), *aff'd*, 298 N.Y. 820, 83 N.E.2d 863 (1949); *Polo v. Edelbrau Brewery, Inc.*, 185 Misc. 775, 60 N.Y.S.2d 346 (2nd Dep't 1945).

■ While the general rule is that attorneys' fees are not recoverable absent statutory authority or contractual agreement, there are exceptions to the rule. One such exception is that fees are recoverable if one party's wrongful conduct has brought about expenses occasioned by litigation with third parties. Burroughs urges the inapplicability of that exception, premising its argument on the requirement that the third-party litigation be a prior, *separate* litigation. Burroughs suggests that since the rights of all three parties here were litigated in one action, no attorneys' fees may be awarded.

There is no reason why attorneys' fees should be recoverable when the aggrieved party files separate lawsuits against the contract breacher and the tortfeasor, but should be denied when he consolidates both into one lawsuit. Burroughs' assertion that attorneys' fees are recoverable only for a separate lawsuit is without basis in New York law. While some New York cases refer to separate litigation, *see Shindler v. Lamb, supra*, others do not. *See Central Trust Co. v. Goldman, supra; Fugazy Travel Bureau, Inc. v. Ernst & Ernst, supra.* In *Central Trust Co. v.*

*Goldman*, the court cited the *Restatement (Second) of Torts* § 914(2) which states:

"One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action."

The *Restatement* notes that this rule applies: "[w]hen a cause of action or an alleged cause of action against the defendant in a proceeding exists only because of the tort of another ...."

■ Thus, while New York law recognizes that separate lawsuits frequently result from tortious interference, *Shindler v. Lamb, supra*, we find no requirement that a plaintiff sue the breaching party and the tortfeasor in separate actions. While it is true that Prospero would have borne the burden of proving Redactron's breach in either a suit on the contract or for tortious interference, Redactron would not have breached the contract were it not for Burroughs' inducement. And, while Redactron would not be liable for the expenses of litigation because of its wrongful breach, Burroughs is liable for those damages as a result of its tortious conduct. Therefore, the trial court properly awarded Prospero attorneys' fees against Burroughs for expenses incurred in proving Redactron's breach.

■ Burroughs' argument that the amount of attorneys' fees awarded was unreasonable is also without merit. Burroughs contends that the amount of fees should have been the subject of an evidentiary hearing. The trial court directed Prospero to submit an affidavit detailing attorneys' fees and expenses and ordered Burroughs to respond with detailed objections thereto. The trial court then invited either party to request a hearing if one were desired. Prospero submitted its affidavits and Burroughs responded by affidavit, yet neither party requested a hearing. Burroughs thus waived its right to a hear-

ing, and the award of attorneys' fees will be upheld.

## IV.

Prospero argues on cross-appeal that the trial court erred in not awarding moratory interest, *i.e.*, prejudgment interest as an element of damages. We agree.

■■■ Initially, Prospero questions whether New York law, the law of the contract, or Colorado law, the law of the forum, controls the question of moratory interest. We hold that Colorado law governs this issue. Colorado follows the minority rule that prejudgment interest is governed by the law of the forum state. *Hayes v. Arbuckle*, 72 Colo. 328, 211 P. 101 (1922); *Davis Cattle Co. v. Great Western Sugar Co.*, 393 F.Supp. 1165 (D.Colo.1975) *aff'd*, 544 F.2d 436 (10th Cir.1976) (*cert. denied*, 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977)). This rule pertains where, as here, the prejudgment interest is not awarded pursuant to a contractual provision, but is awarded as an item of damages as a matter of law.

■■■ Moratory interest is awarded under Colorado law when one party has wrongfully retained the money or property of the other party. As the United States Court of Appeals for the Tenth Circuit noted in *Davis Cattle Co. v. Great Western Sugar Co.*, 544 F.2d 436 (10th Cir.1976):

> "Under Colorado law statutory interest cannot be awarded on an unliquidated claim.... Such [does] not preclude the awarding of moratory interest, *i.e.*, interest by way of damages and not as a creature of statute.... In allowing prejudgment interest, the trial court recognized that just compensation for the victim is a fundamental principle of damages, and that where money has been wrongfully withheld, it is only fair that the victim receive interest on the money thus withheld.
>
> . . . .
>
> We agree with the trial court that Colorado law permits an award of moratory interest in a situation of this type."

*See also Buchanan v. Leonard*, 127 F.Supp. 120 (D.Colo.1954); *Bankers Trust Co. v. International Trust Co.*, 108 Colo. 15, 113 P.2d 656 (1941). *See also* § 5-12-102(1), C.R.S. 1973 (1982 Cum.Supp.).

■■■ Burroughs argues that the damages awarded to Prospero under the Purchase Agreement, and to Livingstone and Klineman under the Agency Agreement, were unliquidated, and that moratory interest may not be awarded on an unliquidated amount. Moratory interest, which is not a creature of statute but rather an element of damages, may be awarded whether or not the claim is liquidated. *Davis Cattle Co. v. Great Western Sugar Co., supra; Bankers Trust Co. v. International Trust Co., supra.* This principle was given statutory authority with the 1979 amendment to § 5-12-102. *See* § 5-12-102(1), C.R.S. 1973 (1982 Cum.Supp.). Thus, whether or not the claims under the Purchase Agreement and the Agency Agreement were liquidated, moratory interest is appropriate.

■■■ Defendants argue that no award of moratory interest is proper in this case because Prospero did not offer any evidence at trial to support entitlement to such an award. The record reveals, however, that Prospero sought moratory interest in its complaint, the trial court declined to grant such interest in its order, and Prospero again sought moratory interest in its motion to alter or amend judgment. Thus, this issue has been properly preserved for appeal.

■■■ Moreover, the trial court made findings of fact, based on evidence in the record, as to the sums Livingstone and Klineman would have received under the Agency Agreement, and Prospero would have received under the Purchase Agreement, for rents on the machines Prospero had purchased and the residual value of those machines. Having made the necessary fact findings, the trial court should have entered an award for moratory interest, as requested. *Hayes v. North Table Mountain Corp.*, 43 Colo.App. 467, 608 P.2d 830 (1980).

The judgment is reversed as to the denial of moratory interest. The cause is remanded with directions that the trial court determine the amounts Prospero would have earned as income both from net monthly rentals and the value of the machines purchased, when these amounts would have been realized by Prospero, and award interest from those dates at the statutory rate. Section 5–12–102(1)(b), C.R.S. 1973 (1982 Cum.Supp.). The trial court shall enter judgment on behalf of Livingstone for moratory interest at the statutory rate on the sum of $206,667, computed monthly to correspond with the dates on which installments of the total sum would have become due. The trial court shall also enter judgment on behalf of Klineman for moratory interest at the statutory rate on the sum of $103,333 also broken down by month over the course of the second contract year. Judgment shall be entered accordingly.

The judgment is affirmed in all other respects.

ENOCH, C.J., and BABCOCK, J., concur.