**AMOCO ROCMOUNT COMPANY, a Delaware corporation, as Unit Operator of, and as individual interest owner in the Anschutz Ranch East Unit; Champlin Petroleum Company, a Delaware corporation, as an individual interest owner in the Anschutz Ranch East Unit, Plaintiffs,**

v.

**The ANSCHUTZ CORPORATION, a Kansas corporation, Defendant.**

No. 86–CV–0172–B.

United States District Court, D. Wyoming.

June 15, 1994.

James A. Clark, Timothy R. Beyer, Baker & Hostetler, Denver, CO, for plaintiffs.

James M. Lyons, Frederick J. Baumann, Rothgerber, Appel, Powers & Johnson, Denver, CO, for defendant.

## ORDER ON REMAND ISSUES

BRIMMER, District Judge.

The above-entitled matter having come before the Court pursuant to the Order of the United States Court of Appeals for the Tenth Circuit of September 13, 1993, and the Court, having considered the materials on file with respect to the issues that have been remanded, having heard oral argument from the parties, and being fully advised in the premises, hereby FINDS and ORDERS as follows:

### Background

This complex and protracted litigation arose out of the interpretation of a Unit Operating Agreement ("agreement") entered into between defendant The Anschutz Corporation ("Anschutz") and the plaintiffs Amoco Rocmount Company ("Amoco") and other working interest owners ("WIOs"). The agreement at issue involved a very significant oil and gas reserve that was discovered in 1979 in portions of Wyoming and Utah.

In 1986, Amoco initiated this litigation against Anschutz based on a dispute as to the meaning and effect of one particular provision of the agreement, § 5.11. Anschutz filed various unrelated counterclaims pursuant to Rule 13(b). This Court ultimately concluded that it was necessary to trifurcate

the bench trial in this matter into three phases, each to be tried separately.

Phase one involved the interpretation of § 5.11 of the agreement. Phase two involved issues relating to prejudgment interest and calculation of the appropriate share of attorney's fees among the WIOs with respect to another litigation involving an earlier contract that Anschutz had entered into with Natural Gas Pipeline Company of America ("NGPL"), hereinafter referred to as the NGPL litigation.[1] Finally, because Anschutz' counterclaims were factually distinct from Amoco's primary claim, they were handled separately in phase three.

In early 1992, after all three phases were tried, this Court entered judgment for Amoco on its § 5.11 claim and awarded it in excess of $29,000,000 in damages. The Court also found for Anschutz on four of its counterclaims and awarded it just under $5,000,-000 in damages. In addition, the Court reached a determination as to the appropriate share of attorney's fees in regards to the NGPL litigation which is discussed in greater detail below.

The parties cross-appealed this Court's Rule 52(a) findings of fact and conclusions of law to the United States Court of Appeals for the Tenth Circuit. In an order dated September 13, 1993, the appeals court affirmed this Court's findings and conclusions with respect to the primary issues of liability, but reversed this Court on two narrow legal issues and remanded those issues, both of which were part of phase two of the trial, to this Court for further proceedings. *See Amoco Rocmount Co. v. The Anschutz Corp.,* 7 F.3d 909, 924–25 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1057, 127 L.Ed.2d 377 (1994).

On December 6, 1993, this Court issued an order on mandate effectuating the judgment of the Court of Appeals. Subsequent proceedings before this Court, however, were held in abeyance pending resolution of a petition for a writ of certiorari to the United States Supreme Court.[2] After the Supreme

---

1. The NGPL litigation eventually reached an out-of-court settlement.

2. The petition for a writ of certiorari involved a jurisdictional issue as to the nature of the prohi-

bition of collusive jurisdiction under 28 U.S.C. § 1359 (1988), an issue not relevant to the present proceedings.

Court denied the petition for a writ of certiorari on February 22, 1994, the parties filed their respective briefs addressing the two issues which were remanded to this Court by the Tenth Circuit.

Both issues which were remanded to this Court involve complex mathematical calculations. The parties have acknowledged this fact, and have represented to this Court that they are only seeking rulings on the underlying legal questions at issue. Based on this Court's conclusions of law on these issues, the parties have represented that they should be able to stipulate to the actual amounts of money that flow as a result of these legal rulings, especially with respect to the prejudgment interest issue. Therefore, the Court's discussion of both issues, but mainly the prejudgment interest issue, will focus primarily on the legal questions presented in the briefs, leaving the exact amount of the calculations to the parties, with the understanding that they will make a good faith effort to resolve the monetary determinations among themselves in the first instance.

### Discussion

As indicated above, both of the issues which were remanded to this Court stemmed from phase two of the litigation.

### A. The Calculation of the Attorney's Fees

The first issue remanded to this Court involves the calculation of the appropriate amount of attorney's fees that Anschutz may recover pursuant to an indemnification agreement which is tied to the attorney's fees that Anschutz expended in settling portions of the NGPL satellite litigation. The Tenth Circuit affirmed this Court's ruling, embodied in its February 12, 1992 findings of fact, that "Anschutz may recover its attorneys' fees in the same pro-rata portion which it was required to share its settlement." *See Amoco,* 7 F.3d at 921. The Tenth Circuit went on to state that it could not exactly understand the Court's formula for calculating Anschutz' recovery of the amount of the fees and directed this Court to "re-review its math on the attorney fee sharing calculation" on remand. *Id.* at 922.

This Court's reasoning was as follows. The first step of the calculation, as set forth above, requires this Court to determine the percentage of the NGPL settlement which Anschutz was required to share. In that regard, Anschutz' total recovery from NGPL was $46,000,000. Of that sum, $17,750,000 was subject to sharing pursuant to § 5.11 of the agreement. $17,750,000 is 38.59% of the $46,000,000 overall recovery.

In order to allocate the burden of paying Anschutz' attorney's fees among Amoco and the smaller WIOs in the same pro rata fashion as the sharing of the overall recovery, the Court multiplied the 38.59% ratio to the amount of Anschutz' attorney's fees expended in the NGPL litigation ($3,600,000), which amounts to $1,389,240.

Amoco argues that the Court's formula was essentially correct but that the arithmetic was erroneous because it failed to account for the fact that Anschutz itself shared in the $17,750,000 recovery attributable to the NGPL litigation under § 5.11. In other words, Amoco argues that this Court's initial calculation of the 38.59% does not account for the fact that Anschutz recovered over one-half of the $17,750,000 itself. Amoco argues that proper calculation of the indemnification issue requires this Court to *deduct* Anschutz' recovery from the $17,750,000 dollars so as to determine the amount of the recovery that is attributable solely to Amoco and the other WIOs and on which the amount of fees that they owe to Anschutz should be calculated. Under this methodology, Anschutz would recover only the percentage of attorney's fees attributable to all parties who shared in the $17,750,000 recovery *with the exception of itself.* This, according to Amoco, would remedy the inequity in having it and the WIOs pay, in addition to their share of fees, Anschutz' share of the fees as well.

Anschutz recovered $9,388,047.10 of the $17,750,000 recovery, with the remainder of $8,365,386.89 to be distributed among Amoco and the other WIOs. Thus, Amoco argues that the percentage owed to Anschutz should be calculated by dividing the $8,365,386.89 dollars attributable to Amoco and the WIOs by the total recovery of $17,750,000, which is approximately 47%.

This 47% must then reduce the total amount of attorney's fees ($1,389,240). Using this method of calculation, Amoco argues, would account for the fact that Anschutz' itself recovered around 53% of the NGPL recovery and would then make Amoco and the other WIOs pay only 47% of the fees as opposed to the present formula whereby Amoco and the WIOs are responsible for 100% of the total $1,389,240 in fees. Using this formula, Anschutz would only be entitled to receive 47% of the 38.59% of the $3,600,-000 or approximately 18.19% of the $3,600,-000 of total attorney's fees available, a sum of approximately $653,000 dollars.

Amoco argues that if the Court does not discount the total amount of fees recoverable to reflect the fact that Anschutz took approximately 53% of the $17,750,000 NGPL recovery, then Anschutz is receiving an unjustified windfall because it is shifting 100% of the attorney's fees to Amoco and the other WIOs, when they should only owe their 47% share and not Anschutz' 53% share as well. Amoco concludes by arguing that this method of calculation was what this Court truly intended in its findings of February 12, 1994, but that the Court's mathematics simply failed to carry out that intent.

Anschutz, however, disputes this characterization. It argues that this Court's earlier calculation was correct and that the scope of the order of remand does not permit this Court to recalculate the amount of fees, but simply requires the Court to check its arithmetic. This Court is not persuaded by Anschutz' interpretation of the Tenth Circuit's order.

The argument urged by Amoco, which is that it is only responsible for 47% of the 38.59%, or approximately 18.19%, was advanced before the Tenth Circuit. The problem was that the Tenth Circuit "[did] not understand how Amoco arrived" at that figure. *See Amoco*, 7 F.3d at 921. The appeals court also stated that Anschutz' defense of the calculation did not shed any light on that subject since it merely defended the arithmetic as "not clearly erroneous." *Id.* As a result, this Court is confident that the scope of the Tenth Circuit's order expressly permits the Court to adjust the award of fees accordingly. In essence, the Court is merely finding that the reasoning set out by Amoco before the Tenth Circuit was correct, that the award of attorney's fees should be adjusted downward, and that Anschutz should only receive about 18.19% out of the $3,600,000 in fees.

Amoco is correct in its assertion that this Court's intention in the initial findings of fact was to make each party responsible for its pro rata share of the attorneys' fees. Anschutz is a "party" just like Amoco and the smaller WIOs. Permitting Anschutz to recover 100% of the $1,389,240 in fees from Amoco and the other WIOs gives Anschutz an unfair windfall in that it is effectively permitting Anschutz to shift the responsibility for its own fees owed for 53% of the recovery to Amoco and the other WIOs. While this Court, and the Tenth Circuit, have acknowledged that a mathematical error was made, this Court is in the best position to know what it meant in its findings of February 12, 1992. That intention was not to give Anschutz a windfall but rather to permit Anschutz to recover the portion of attorney's fees that were attributable to Amoco and the other WIOs' recovery out of the NGPL litigation.

For all of the foregoing reasons, the Court concludes that, pursuant to the indemnification agreement, Anschutz is entitled to recover $8,365,286.89 (the share of fees owed by Amoco and other WIOs) divided by $17,750,-000 (the total recovery from the NGPL litigation) times 38.59% (the percentage of recovery) multiplied by $3,600,000 (the total award of attorney's fees), which is an amount around $650,000.

### B. *Calculation of Pre-Judgment Interest*

The second issue to be addressed on remand requires this Court "to consider the availability and, if applicable, the calculation of prejudgment interest under Colorado law." *Amoco*, 7 F.3d at 920. This is essentially an issue of statutory interpretation of the applicable Colorado statute, § 5–12–102.[3]

---

**3.** At trial, this Court concluded that under Wyoming law, prejudgment interest was not avail-

able. The Tenth Circuit, however, held that Col-

Thus, the obvious starting point is the plain text of the statute itself.

Colorado's prejudgment interest statute provides, in relevant part:

(1) Except as provided in [another section not relevant to this case], when there is no agreement as to the rate thereof, creditors shall receive interest as follows:

 (a) When money or property has been *wrongfully withheld,* interest *shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property* from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; *or, at the election of the claimant,*

 (b) Interest shall be at the rate of *eight percent* per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs.

(2) When there is no agreement as to the rate thereof, creditors shall be allowed to receive interest at the rate of *eight percent* per annum compounded annually for all moneys after they become due on any bill, bond, promissory note, or other instrument of writing, or money due on mutual settlement of accounts from the date of such settlement and on money due on account from the date when the same became due.

(3) Interest shall be allowed as provided in subsection (1) of this section *even if the amount is unliquidated* at the time of wrongful withholding or at the time when due.

COLO.REV.STAT. § 5–12–102 (West Supp.1992) (emphases added).

Several observations can be made from the language of the statute. First, it is clear that the threshold determination of whether a party may recover prejudgment interest turns on whether "money or property" has been "wrongfully withheld" by the opposing party. *See* § 5–12–102(1). Second, if this threshold consideration is satisfied, then, "at the election of the claimant," the amount of interest that may be recovered is either eight percent, *see* § 5–12–102(1)(b), or "an amount which fully recognizes the gain or benefit realized by the person withholding such money or property[,]" *see* § 5–12–102(1)(a), often referred to as "moratory interest." *See Davis Cattle Co., Inc. v. Great Western Sugar Co.,* 393 F.Supp. 1165, 1186 (D.Colo.1975) (Winner, J.), *aff'd,* 544 F.2d 436, 441–42 (10th Cir.1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977).

■ In the case at bar, the parties agree that the funds relating to Amoco's claim, as well as Anschutz' counterclaims, were in fact "wrongfully withheld" as that term has been defined by the Colorado state courts.[4] The real question posed, therefore, is whether the parties may elect moratory interest as the measure of the prejudgment interest sought. The plaintiffs rely on the literal language of § 5–12–102(1) for the proposition that they are entitled to elect moratory interest. The defendants argue, however, that subsections (1) and (2) of the statute distinguish between liquidated and unliquidated claims. They argue that subsection (2) governs prejudgment interest for liquidated claims and that sub-

orado law governed prejudgment interest and not Wyoming law. *See Amoco,* 7 F.3d at 920.

4. The parties agree that each side has "withheld" funds from the other side. The only possible question is whether these withholdings were "wrongful," a claim that is foreclosed under Colorado law.

In *Mesa Sand & Gravel Co. v. Landfill, Inc.,* 776 P.2d 362 (Colo.1989), the Colorado Supreme Court noted that "a liberal construction" should be applied to this statute, and that as such, it should not be limited to "tortious conduct on the part of the withholding party" and that it should, and does, extend to actions alleging breach of

contract. *Id.* at 364–65 (citing cases); *see also Flexisystems, Inc. v. American Standards Testing Bureau, Inc.,* 847 P.2d 207, 208 (Colo.App.1992); *Benham v. Manufacturers and Wholesalers Indemnity Exchange,* 685 P.2d 249, 254 (Colo.App. 1984) (noting that nothing in the statute "indicates a requirement that a creditor must establish tortious conduct on the part of the debtor").

In the contract setting, the term "wrongful" simply requires proof that the breaching party have breached an obligation to pay either money or property to the non-breaching party. *See Mesa,* 776 P.2d at 366 (noting that the breach of a contractual obligation makes a withholding "wrongful" under this statute).

section (1) governs unliquidated claims. As a result, the defendants argue that moratory interest is unavailable to the plaintiffs because their claim is outside the scope of subsection (1) (which allows moratory interest) since it is a liquidated claim.[5]

### 1. Does the Statute Distinguish Between Liquidated and Unliquidated Claims?

Anschutz' primary argument turns on whether the statute differentiates between liquidated and unliquidated claims. If the defendant's argument is correct, then it follows that Amoco (and Anschutz with respect to at least some of its counterclaims) may not recover moratory interest under § 102(1)(a). If, however, this distinction is untenable, then the parties may, at their election, choose moratory interest under § 102(1)(a) if they so desire. Therefore, it will be necessary to explore the history of the statute, the statutory language and the Colorado decisional law interpreting this statute.[6]

The Colorado Supreme Court has stated that § 5–12–102 is to be afforded a "liberal construction," *Mesa Sand & Gravel,* 776 P.2d at 365; *Isbill Assocs., Inc. v. City & County of Denver,* 666 P.2d 1117 (Colo.App. 1983), in an effort "to discourage a person responsible for payment of a claim to stall and delay payment until judgment or settlement." *Id.* at 364. "Section 5–12–102 recognizes the time value of money. It represents a legislative determination that *persons* suffer a loss when they are deprived of property to which they are legally entitled." *Id.* (citations omitted). The statute was designed to disgorge any gain or benefit to the party withholding funds in an effort to prevent that party from benefitting from their actions in depriving another party of its right to use money or property that is legally its but which it does not possess.

In effectuating this policy, the legislature statutorily provided that a party whose money or property was wrongfully withheld may elect prejudgment interest at a rate of either eight percent (§ 5–12–102(1)(b)) or so-called moratory interest (§ 5–12–102(1)(a)). In addition, the legislature provided that prejudgment interest at the rate of eight percent was available for moneys due on, *inter alia,* an "instrument of writing," *see* § 5–12–102(2), which encompasses instruments based on contractual relations, instruments importing mutuality, and instruments implying an obligation to pay for a consideration rendered. *See Bloom,* 547 P.2d at 938 (citing *Cobb v. Stratton's Estate,* 138 P. 35, 38 (Colo. 1914)).

Anschutz argues that in this case, Amoco's claim falls under *both* subsection (1) and subsection (2) since the moneys were wrongfully withheld and since they were also moneys due on an instrument of writing (§ 5.11 of the agreement). Anschutz further argues that when both of these subsections apply, as in the case where money was wrongfully withheld on an instrument of writing—which is this case—then there must be a way for deciding which section governs. Anschutz argues that otherwise, the adversely affected party will always seek prejudgment interest under subsection (1) and that this would render subsection (2) superfluous. Relying on the "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect[,]" *United States v. Nordic Village, Inc.,* 503 U.S. 30, 36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992) (citations omitted), and the corollary principle that a statute should not be construed in a way that renders words or phrases meaningless or superfluous, *see Colautti v. Franklin,* 439 U.S. 379, 392, 99

---

**5.** It is undisputed that Amoco's contract claim is in fact liquidated since the amount due is either fixed or readily amenable to calculation. *See Bloom v. Wolfe,* 37 Colo.App. 407, 547 P.2d 934, 938 (1976). In addition, while the parties agree as to the characterization of three of Anschutz' four counterclaims, they dispute whether the fourth claim is liquidated or unliquidated. Because of this Court's conclusion that the statute does not distinguish between liquidated and un-

liquidated claims, the Court need not decide whether the fourth counterclaim is liquidated or unliquidated.

**6.** Because this Court concludes that existing Colorado decisional law is sufficient to permit an informed decision as to the defendant's argument, their motion to certify this issue of law to the Colorado Supreme Court is hereby denied.

S.Ct. 675, 684, 58 L.Ed.2d 596 (1979); *accord Bridger Coal Co./Pacific Minerals, Inc. v. Director, O.W.C.P.,* 927 F.2d 1150, 1153 (10th Cir.1991) (citations omitted), Anschutz contends that subsection (1) should only apply to claims which are unliquidated, and that subsection (2) should apply to claims that are liquidated.

Amoco disputes this argument, asserting that both the statute on its face and the Colorado courts' interpretation of the statute do not draw the distinction urged by Anschutz. A careful review of existing Colorado law leads this Court to the conclusion that the critical fact in deciding whether to award prejudgment interest under Colorado law is whether the money or property was wrongfully withheld and not whether the claim was liquidated or unliquidated. As a result, the Court concludes that the plaintiff, and the defendants with respect to the appropriate counterclaims, may, at their option, elect moratory interest under subsection (1) if they so choose. This conclusion flows from the interplay of three factors: (1) Anschutz has not cited this Court to any Colorado cases that adopt this dichotomy; (2) a reading of the entire statute reinforces the fact that such a distinction does not exist; and (3) such an interpretation would not, in this Court's opinion, render subsection (2) superfluous in all cases.

■ Both sides have cited this Court to a wide array of Colorado state cases along with federal cases interpreting Colorado law in support of their respective positions. It must be remembered that this Court is bound to follow the existing law of the State of Colorado, regardless of whether the Court *agrees* with that law or not. *Cf. Lowell Staats Min. Co. v. Pioneer Uravan, Inc.,* 878 F.2d 1259, 1267 (10th Cir.1989).

In *Prospero Assocs. v. Redactron Corp.,* 682 P.2d 1193 (Colo.App.1983), the Colorado Court of Appeals was faced with the issue of whether moratory interest was available on an unliquidated claim for breach of contract.[7] The court stated that "[m]oratory interest ... may be awarded whether or not the claim is liquidated.... This principle was given statutory authority with the 1979 amendment to § 5–12–102.... Thus, whether or not the claims under the [contract] were liquidated, moratory interest was appropriate." *Id.* at 1200 (citations omitted). This conclusion was reached in another case involving an unliquidated claim, where the state intermediate appeals court stated that "[moratory] interest may be awarded regardless of whether the claim is liquidated or unliquidated." *Sharp Bros. v. Westvaco Corp.,* 878 P.2d 38, 46 (Colo.App.1994).

Although it is arguable that *Prospero* and *Westvaco* are distinguishable because they involved unliquidated claims, it is clear that the reasoning of those cases applies with equal force in the context of liquidated claims as well. For example, in *Danburg v. Realties, Inc.,* 677 P.2d 439 (Colo.App.1984), the plaintiff sued for breach of contract for the sum of $10,000. The court of appeals affirmed the award of moratory interest on this claim without regard to the claim's status as liquidated or unliquidated, even though it was liquidated.[8]

In *Rocky Mountain Machinery v. First Nat'l Bank,* 767 F.2d 722, 725 (10th Cir. 1985), the Tenth Circuit, in interpreting § 5–12–102, stated that the statute "do[es] no[t] require that the amount be liquidated" in order to recover moratory interest. In addition, in *Lowell Staats,* the Tenth Circuit permitted an award of moratory interest under § 5–12–102(1) in a breach of contract case without regard to whether the claim was liquidated. *Id.* at 1267–71.

■ In light of the authority holding that moratory interest is available in cases involv-

---

7. Because the claim involved breach of contract and money that was wrongfully withheld, it is apparent that both subsection (1) and subsection (2) arguably applied, as in the case at bar.

8. Amoco relies on other cases that it interprets as reaffirming the basic holding of *Danburg. See South Park Aggregate v. Northwestern Mat. Ins. Co.,* 847 P.2d 218 (Colo.App.1992); *Cooper v.*

*Peoples Bank and Trust Co.,* 725 P.2d 78 (Colo. App.1986); *Benham,* 685 P.2d 249. While it is difficult to discern if these cases involved liquidated or unliquidated claims because no reference was made to this fact, it is clear that the *absence* of any reference to whether it was liquidated or unliquidated reinforces the conclusion that such a distinction is irrelevant.

ing both liquidated and unliquidated claims, and the fact that the Colorado courts have, in other circumstances, not even addressed whether the claim was liquidated for purposes of deciding whether moratory interest was available, it appears to this Court that that distinction has no bearing on the availability of prejudgment interest under subsection (1). This, coupled with the fact that Anschutz has not cited this Court to any decision to the contrary, leads this Court to conclude that the availability of moratory interest under subsection (1) turns on whether the money or property was wrongfully withheld, and not whether the claim was liquidated or unliquidated.

Moreover, even assuming that such a distinction was viable under the case law, the plain language of the statute seems to undercut Anschutz' argument. Subsection (3)[9] expressly provides that interest shall be allowed under subsection (1) "even if the amount is unliquidated at the time of the wrongful withholding ..." COLO.REV.STAT. § 5–12–102(3). The most natural and ordinary meaning of the "even if" language of this subsection is that moratory interest has always been available for liquidated claims and that it was now available for unliquidated claims as well by virtue of subsection (3). Thus, Anschutz' argument that subsection (1) only applies to unliquidated claims fails to account for the language contained in subsection (3).

Finally, the Court notes that although Anschutz' argument that such a reading would render subsection (2) superfluous has some superficial appeal, a more careful examination reveals the flaw in this argument. In a case involving an "instrument of writing" where money was wrongfully withheld—such that both subsections (1) and (2) apply— Anschutz argues that because the prejudgment interest available under subsection (1) is at least as great as the prejudgment interest available under subsection (2), the latter is rendered superfluous. While it is apparent that this argument might be correct in some circumstances, such a reading in no way renders subsection (2) without meaning.

One can certainly imagine sets of circumstances where subsection (2) will continue to have vitality in, for example, cases involving an instrument in writing but not a wrongful withholding of money or property. Because situations can reasonably be conceived where subsection (2) would still apply, it is clear that the Court's interpretation of it in this case does not render it meaningless.

**THEREFORE,** it is

**ORDERED** that the parties shall calculate the appropriate amount of attorney's fees which Anschutz may recover pursuant to the terms of the Court's order. It is further

**ORDERED** that the parties shall determine the amount of prejudgment interest in accordance with this Court's interpretation of Colorado's law of prejudgment interest set forth above. It is further

**ORDERED** that the Defendants' Motion to Certify Question to the Colorado Supreme Court be, and the same hereby is, **DENIED.**

---

9. It is a "cardinal rule [of statutory construction] that a statute is to be read as a whole[.]" *King v. Vincent,* 502 U.S. 215, 221, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991); *see also United States Nat'l Bank of Oregon v. Independent Insurance Agents of America, Inc.,* —— U.S. ——, ——, 113

S.Ct. 2173, 2182, 124 L.Ed.2d 402 (1993) (noting that statutory interpretation is an "holistic endeavor") (citation omitted). Therefore, it is entirely proper for this Court to attempt to discern the meaning of subsection (1) from the language of subsection (3).